# Alan and Dorothy Tallarico v. Richard Brett, Elizabeth Brett and Mathilde Berger

[400 A.2d 959]

No. 172-78

Present: **Barney, C.J., Daley, Larrow and Hill, JJ.**

Opinion Filed February 6, 1979

*Harry A. Black* of *Black and Plante*, White River Junction, for Plaintiffs.

*Thomas P. Wright*, Woodstock, for Defendants.

**Hill, J.** The subject of this appeal is a private road. It crosses the plaintiffs' land which abuts and lies west of River Street in Woodstock, Vermont. Defendant Mathilde Berger also owns land on the west side of River Street, and it abuts the plaintiffs' property on the north. The private road lies just to the south of the Berger-Tallarico property line. It provides the defendants Richard and Elizabeth Brett access to their land, which lies immediately to the rear of the Berger and Tallarico premises, from River Street. The road has been in its present location for at least fifty years.

The Brett and Tallarico premises were orginally purchased in the mid-1920's by Lyle C. and Margaret W. Pearsons, husband and wife. Mr. Pearsons raised animals and held auctions on what is now the Bretts' land. Access to this area was over the private road involved here. It followed existing wheel tracks heading back to the field. It is not known who made the tracks, but they were longstanding indentations in the ground.

Beginning in the mid-1930's, the Pearsons intermittently closed the private road, and in 1941 and 1948 they published notices in the local newspaper advising that the closings were "for the purpose of preserving our rights and preventing the public or individuals from acquiring a prescriptive right to said driveway." The road was closed by barricade in 1956, 1962, and 1970.

Defendant Berger's predecessor in title, Harry Ambrose, lived and operated a plumbing business on these premises. His customers used the private road to reach the plumbing shop. Ambrose

also used the road as access to his garage located in the southwest corner of his land.

Mr. Ambrose conveyed his land to Mrs. Berger on October 1, 1953. That deed contains no reference to the private road involved here. However, the Pearsons granted Mrs. Berger permission to use the road to get to the garage. In exchange, Mrs. Berger paid for snow removal.

On the eighth day of September in 1961, the Pearsons conveyed the rear portion of their property to Elizabeth B. Brett, who, by way of straw deeds, conveyed to Richard M. and Elizabeth B. Brett, husband and wife. The deed from the Pearsons to Mrs. Brett included "the right to use a 12' right of way running from River Street to the north[westerly] [1] corner of said right of way being marked by the iron pin above mentioned as being slightly westerly of the corner of the garage on the Berger premises. Said right to use the above right of way is in common with other persons." The course of the private road on the Pearsons' land deviates from the right of way described in the deed from Pearsons to Mrs. Brett. The maximum deviation, which is located just east of the Pearsons (now Tallarico) -Brett property line, is approximately four feet, the road lying that far south of the southern boundary of the right of way. Moving east, the deviation decreases to a point where the private road and the right of way are, and remain, consistent with each other. For most of their lengths, the road and the right of way coincide.

When the Bretts took possession of their property, they began using the private road as the driveway to their home. The Pearsons never objected to this use, and the Bretts subsequently paved that portion of the road which is located on their land and had a telephone pole erected on its eastern boundary. Mr. Brett also improved the road and kept it plowed with the Pearsons' approval.

The remaining Pearsons' property was conveyed to Alan and Dorothy Tallarico, husband and wife, on August 17, 1972. This deed incorporated the Pearsons to Brett deed by reference and further recited: "Included in this sale is a driveway . . . subject to the right of Elizabeth B. Brett to travel same." Other than the

---

[1] All directional references conform to those employed by the parties and the trial court.

reference to the Bretts' deed, no mention is made in Tallaricos' deed of limiting the Bretts to the twelve foot right of way. The location of the driveway and the fact that both Mrs. Berger and the Bretts made use of it were well known to the Tallaricos. They made no inquiry concerning the possible claims of Mrs. Berger or the Bretts.

Shortly after acquiring this land, Mr. Tallarico demanded that Mrs. Berger quit her use of the private road by September 1, 1973. Shortly thereafter, he told the Bretts to quit using that portion of the road that deviated from the right of way described in their deed. The Bretts, over Tallarico's objection, then attemped to license Berger's use of the right of way.

On January 30, 1974, the Tallaricos filed suit in Windsor Superior Court. They sought a declaratory judgment concerning the rights of the parties in the road and an injunction prohibiting Mrs. Berger's use of it. (Several other claims, including damage claims against both defendants for trespass, were later withdrawn.) Mrs. Berger claimed prescriptive rights or an easement by estoppel in the road to gain access to the garage at the rear of her premises. The Bretts claimed prescriptive rights or an easement by estoppel in that portion of the road that deviates from the right of way described in their deed from the Pearsons. Both defendants requested injunctions prohibiting the plaintiffs from interfering with their respective uses and declaratory relief identical to that requested in the complaint. They also sought to enjoin the Tallaricos from placing a fence along both sides of the twelve foot right of way.

A hearing was held. The court made findings of fact and concluded that the Bretts failed to acquire prescriptive rights in the portion of the right of way that deviates from the description in their deed, because they had "not openly, hostilely, adversely and continuously for fifteen years used the existing traveled strip." See *Abatiell* v. *Morse*, 115 Vt. 254, 56 A.2d 464 (1948). It also concluded that there had not been continuous adverse use of the road by defendant Berger's predecessor in title and that there had been no continuous use of the road by Mrs. Berger since she acquired the property in 1953. The court noted that the Bretts conceded that they could not license Mrs. Berger's use of the road, and it found that "neither a fence nor the reestablishment of the drive some four feet northerly at its westerly end, would interfere with the access of Defendant Brett."

The court entered an order decreeing that none of the defendants had acquired prescriptive rights in the Tallaricos' private road, that the Bretts have a right of way across the plaintiffs' land as described in their deed, that the Bretts cannot license others to use the right of way, and that the plaintiffs, as owners of the servient estate, may use their land in any way which does not materially impair or unreasonably interfere with its use by the Bretts, including the construction of a fence so long as the way is not obstructed.

The defendants filed a motion to amend the findings under V.R.C.P. 52(b) and to amend judgment under V.R.C.P. 59. It alleged that the court failed to rule upon the defendants' claims of easements by estoppel and also failed to make findings relevant to those claims. A hearing was held, and the court entered an order denying the motion. An appeal was filed, but it was dismissed because the order appealed from failed to adjudicate all the claims of the parties and was not otherwise appealable under V.R.C.P. 54(b) or V.R.A.P. 5. *Tallarico* v. *Brett*, 136 Vt. 626, 385 A.2d 682 (1978). On remand and based on a stipulation of the parties, the trial court amended the judgment order to dismiss "all other claims." This appeal is from that order and the order denying the defendants' motion to amend the findings and to amend judgment. We affirm.

■ We first dispose of claims made by the Bretts. They primarily rely on the case of *Read* v. *Webster*, 95 Vt. 239, 113 A. 814 (1921). That case involves the concept of an easement by implication. *Read* holds that if an owner permanently alters two parts of his land, imposing a burden on one for the benefit of the other, and conveys one portion without expressly granting or reserving the benefit, the law will imply the grant or reservation if: (1) the benefit to the dominant and the burden to the servient estate exist and are obvious at the time of the conveyance; (2) the common owner used the premises in their altered condition long enough to show that the change was intended to be permanent; and (3) such an easement is a strict necessity in that there is no other reasonable mode of enjoying the dominant estate. "The underlying principle is that the conveyance of a thing imports a grant of it as it actually exists at the time the conveyance is made, unless the contrary intention is manifested in the grant." *Id.* at 243, 113 A. at 816.

■    The appellants' reliance on *Read* is misplaced. That case applies only where the conveyance is silent regarding the easement. The deed from the Pearsons to the Bretts grants an express right of way over the Tallarico premises, and the description in the deed controls its location. See *Holden* v. *Pilini,* 124 Vt. 166, 200 A.2d 272 (1964); *Scott* v. *Leonard,* 119 Vt. 86, 119 A.2d 691 (1956).

■■    Even if we were disposed to apply the *Read* case, the appellants have failed to establish a strict necessity, and it was their burden to do so. *Davis* v. *Gowen,* 83 Idaho 204, 360 P.2d 403 (1961); *Fuller* v. *Watkins,* 117 Vt. 257, 90 A.2d 444 (1952). The trial court found that reestablishment of the drive some four feet northerly at its westerly end would not interfere with the Bretts' access. The appellants argue that this finding is clearly erroneous because a fence erected by Tallarico on the southerly most boundary of the right of way, as defined by Bretts' deed, would interfere with their access because there would be insufficient room for vehicular traffic between the telephone pole and Tallaricos' proposed fence. We disagree.

Taking the evidence in the light most favorable to the prevailing party and excluding the effect of any modifying evidence, see *Green Mountain Marble Co.* v. *State Highway Board,* 130 Vt. 455, 296 A.2d 198 (1972), the challenged finding is not clearly erroneous. Mr. Tallarico testified that in his opinion the construction of the fence would not interfere in any way with the Bretts' access.

■■    But even if this finding were set aside the appeal would fail. The appellants rely on the placement of the telephone pole on their land to establish the element of strict necessity. The *Read* case is based on the principle that "[t]he parties are presumed to contract in reference to the condition of the property at the time of the grant. The existence of an easement by implication, then, depends upon the circumstances shown by the evidence as they were at that time." *Id.* at 244, 113 A. at 816 (citations omitted). The telephone pole was installed under authority of a pole line easement given by the Bretts to the Central Vermont Public Service Corporation on June 26, 1962, approximately one year after they acquired the Pearsons' property. There is no evidence in the record tending to show that the deviation involved here is a necessary consequence of conditions extant at the time of the grant. The record indicates that the Bretts began using the road

because it was in existence and convenient, but mere convenience or usefulness is not sufficient to establish an easement by implication. *Dee* v. *King*, 73 Vt. 375, 50 A. 1109 (1901).

■ The Bretts next contend that if an easement over the deviation does not exist by implication or necessity, it arises by way of estoppel. They reason that the Pearsons, while in possession of the servient estate, were estopped to dispute the location of the way because of their long time acquiescence in the Bretts' use of the road and their failure to object when the Bretts, by installing the telephone pole and paving their section of the road, changed position in reliance on it. They further reason that the Tallaricos, as the Pearsons' grantees, are bound by this estoppel because they took "subject to" the Bretts' right to use the road and with actual knowledge of the road's location and the Bretts' use of it. The appellants conclude that because they established the road based on an existing path believing it to be their right of way, the equities are such that it would be unreasonable to require them to remove the paved section of the road and reposition the telephone pole four feet to the north. We reject this argument.

The appellants rely in part on language in the Tallaricos' deed. The deed recites: "Included in this sale is a driveway . . . subject to the right of Elizabeth B. Brett to travel same." The parties agree that the driveway referred to is the private road involved here.

The language concerning the driveway is in recognition or confirmation of rights existing in a person not a party to the deed. As such, it is to be construed as an exception and not a reservation. *Toussaint* v. *Stone*, 116 Vt. 425, 77 A.2d 824 (1951). The prevailing rule is that the grantee of a deed that contains an exception in favor of a stranger is not estopped to deny the efficacy of the exception. Annot., 88 A.L.R.2d 1199, 1224 (1963). Such an exception is effective only to confirm a pre-existing right and will not itself vest any title or interest in the third person. See *First National Bank* v. *Laperle*, 117 Vt. 144, 86 A.2d 635 (1952); *Toussaint* v. *Stone, supra.*

■ The burden of proving an estoppel rests on the party claiming it. *Black River Associates, Inc.* v. *Koehler*, 126 Vt. 394, 233 A.2d 175 (1967). In the absence of proof to the contrary, we interpret this exception as being in confirmation of a pre-existing right, *i.e.*, the right of way granted to the Bretts in their deed

from the Pearsons. The document creating that right controls its scope. See Annot., 88 A.L.R.2d 1199, 1202 (1963).

■ Furthermore, the Tallaricos' deed makes specific reference to the deed from Pearsons to Elizabeth Brett. This practice is as effective as if the deed referred to had been copied into the deed making the reference. *Basso* v. *Veysey*, 118 Vt. 399, 110 A.2d 706 (1954). This being so, no more is excepted from the Tallaricos' deed than the right of way specifically described in the deed referred to, because the specific controls the general. *Pareira* v. *Wehner*, 133 Vt. 74, 330 A.2d 84 (1974).

■ The Bretts also claim that an easement by estoppel exists because the Pearsons acquiesced in their use of the road and failed to object when they made improvements to their land in reliance on the road's location. The appellants have failed to demonstrate any conduct or representations of the Pearsons which misled them to their prejudice. See generally *Caledonia Sand & Gravel Co.* v. *Campbell*, 128 Vt. 182, 260 A.2d 221 (1969). But they argue that the Pearsons' acquiescence and silence in this case is sufficient to create an estoppel. We disagree.

■ "It is only where there is an obligation to speak, and the duty is not performed, that the defense of estoppel by silence is properly applied. The failure to speak or disclose must be culpable." *Boston & Maine R.R.* v. *Howard Hardware Co.*, 123 Vt. 203, 211, 186 A.2d 184, 191 (1962) (citations omitted). There is no breach of duty or culpability, however, associated with a failure to disclose information already in the possession of the party asserting the estoppel. See *id.; Tustin* v. *Philadelphia & Reading Coal & Iron Co.*, 250 Pa. 425, 95 A. 595 (1915). In this case the Bretts had notice of the way's location by virtue of their deed from the Pearsons. That instrument locates their right of way with particularity. Given these circumstances, their claim of estoppel by acquiescence or silence must fail. This especially is true where the changes relied on by the Bretts to establish an estoppel occurred entirely on their property.

■ We now turn to the single claim advanced by the appellant Mathilde Berger. While disclaiming any prescriptive or adverse claim on appeal, she asserts an irrevocable oral license to use the road to reach the garage in the southwest corner of her land. The appellant contends that this issue was brought before

the trial court by the motion to amend the findings and to amend the judgment. We disagree.

The motion stated:

> An easement may be created by an executed oral agreement. Here the change in position by Mr. Ambrose of enlarging his garage and his maintenance work on the right-of-way with the acquiescence, if not the urging of Mr. Pearsons, and the later similar statement by Mr. Pearsons to Mrs. Berger confirm an executed oral agreement for an easement to use the right-of-way to the garage premises at the rear of the Berger property.

An easement and a license are distinct concepts. *Western Union Telegraph Co.* v. *Bullard*, 67 Vt. 272, 31 A. 286 (1895). The affirmative defense of license was not pleaded as required by V.R.C.P. 8(c), and none of the arguments now advanced by the appellant were made in the trial court. A theory not pleaded or raised below may not be raised for the first time in this Court. *Pond* v. *Carter*, 126 Vt. 299, 229 A.2d 248 (1967); *Gaylord* v. *Hoar*, 122 Vt. 143, 165 A.2d 358 (1960). We therefore decline to pass on this claim.

In the conclusion to their brief the appellants request that we rule that the Tallaricos are estopped from erecting fences which will interfere with their respective uses. The brief contains no more than the bare request. "This Court is not required nor about to undertake a search for claimed error where it is not adequately briefed, supported by argument, or pointed out in the record before us." *In re Wright*, 131 Vt. 473, 490, 310 A.2d 1, 10 (1973). See *In re Wildlife Wonderland, Inc.*, 133 Vt. 507, 346 A.2d 645 (1975); *In re Smith, Bell & Hauck Real Estate, Inc.*, 132 Vt. 295, 318 A.2d 183 (1974).

*Affirmed.*

Billings, J., did not sit.