## Weyerhaeuser Company v. Town of Hancock

[559 A.2d 158]

No. 87-276

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed March 24, 1989

*John R. Barrera*, Middlebury, for Plaintiff-Appellant.

*Andrew Jackson*, Middlebury, for Defendant-Appellee.

**Allen, C.J.** This is an appeal by the Weyerhaeuser Company from a decision of the Vermont Board of Appraisers as to the valuation of the corporation's plant in Hancock for the tax year 1985. We affirm in part, but remand the matter for further findings on valuation of the machinery and equipment.

Taxpayer's facility in Hancock is used for the manufacture of plywood panels and consists of a building on 153 acres, together with machinery and equipment. Some one hundred acres of the total parcel is mountain woodland adjacent to the site and is considered glebe land[1] in accordance with the terms of a 999-year lease dating from 1831 over which taxpayer has exclusive possession. A pond with a capacity of 650,000 gallons is located on the 100-acre parcel and serves the manufacturing operation. All but 2.5 acres of the total property is located on the westerly side of Route 100. The main building dates from 1928, but has been improved and enlarged continually since then. Together with three outbuildings, the plant site accounts for 7.5 acres of the total tract.

The Town assessed taxes in 1985 for the total tract of land, including the 100-acre glebe land parcel, the buildings, machinery and equipment, inventory, and other personal property. Taxpayer appealed to the Board of Civil Authority, which denied its requests, and then to the State Board, which reduced the value of the main building and land from $1,151,850 to $905,700, the value of the personal property not classified as real estate from $101,400 to $72,428, and the appraised value of office equipment from $30,000 to $21,466. In all other respects, the Board of Appraisers affirmed the decision of the Board of Civil Authority. At issue on appeal to this Court from the State Board are the taxation of the glebe land, the classification of certain machinery and

---

[1] In ecclesiastical law, the phrase "glebe land" refers to "land possessed as part of the endowment or revenue of a church or ecclesiastical benefice." Black's Law Dictionary 621 (5th ed. 1979).

equipment as real estate, and the valuation placed on the machinery and equipment and other personal property.

## I.

■ Taxpayer first contends that the Board erred in taxing the 100-acre parcel, since the lease was not a "perpetual lease" under 32 V.S.A. § 3610(a),[2] which defines such a lease as one including

> every leasehold interest in land located in Vermont, and every estate in Vermont land other than fee simple absolute, arising out of or created by an instrument of lease which conveys to a person designated as lessee . . . the right to possess, enjoy and use the land *in perpetuity or substantially in perpetuity* . . . .

(Emphasis added.) Taxpayer argues that the lease is not perpetual because it is for a fixed term of years, relying upon Black's Law Dictionary 801 (5th ed. 1979), which defines a perpetual lease as one lasting "without limitation as to time."

This argument, however, overlooks that part of the statutory definition of § 3610(a) relating to leaseholds held "substantially in perpetuity," a more flexible definition than that given in the Black's Dictionary. The inclusion of this language demonstrates the Legislature's intent not to limit the statute's application only to lease terms without time limitations, as plaintiff contends. Instead, it is clear that the Legislature intended to allow the taxation of leaselands essentially equivalent to fee simple interests. We conclude, therefore, that the Board was correct in deciding that the 999-year lease at issue was one "substantially in perpetuity" within the meaning of § 3610(a).

## II.

■ Taxpayer next argues that the Board failed to apply the correct legal standards in assessing its manufacturing machinery as real estate. Citing *Sherburne Corp.* v. *Town of Sherburne*, 124

---

[2] As a perpetual lease taxpayer's interest would be taxable under 32 V.S.A. § 3610(c) at "its market value as determined by the listers or appraisers, taking into consideration all limitations upon the use of the land by the lessee which substantially diminish the value of his right to occupy, use or enjoy the land . . . ." The annual rental payable under a perpetual lease is credited to the taxpayer under § 3610(f).

Vt. 481, 207 A.2d 125 (1965), and 32 V.S.A. § 3618(c), taxpayer contends that its machinery can be considered real estate for tax purposes only if classified as fixtures under a stringent three-part test enunciated in *Sherburne*, which this Court determined also applied to issues arising under § 3618. See *Village of Lyndonville v. Town of Burke*, 146 Vt. 435, 439, 505 A.2d 1207, 1210 (1985).[3] In fact, the Board apparently applied § 3618 in reaching its conclusions as to the taxability of the machinery at issue:

> During inspection of the subject property the Board observed that numberous [sic] items were of special use design, set into place to obviously be permanent installations. The removal of these pieces would cause damage to the floor, walls or ceilings because of their size, shape or weight. Such items in accordance with 32 VSA 3618 are specified as M&E [machinery and equipment] to be treated as real estate.

Section 3618 and the three-part "fixtures" test, however, apply only where a town has voted under 32 V.S.A. § 3617 not to tax inventory, which the Town has declined to do.[4] In addition, the subsection of § 3618 relied on by plaintiff simply provides that fixtures are not "business personal property" taxable under that section. It does not support the argument that such property cannot be taxed as real estate under another section of the statute.

■ 32 V.S.A. § 3602, not § 3618, governs the present case. Section 3602's language is broader than that contained in § 3618, providing that

> [e]ngines and boilers, electric motors, air compressors, traveling cranes and machinery, so fitted and attached as to be a part of a manufacturing or other plant and kept and used as such, shall be set in the grand list as real estate.

---

[3] Section 3618(c) provides in pertinent part that taxable business personal property, as the phrase is used in that section, does *not* include, *inter alia*, "goods and chattels so affixed to real property as to have become part thereof, and which are therefore not severable or removable without material injury to the real property."

[4] Section 3617(a) provides that
> [a]t an annual or special meeting warned for the purpose, a municipality may . . . elect not to tax inventory as defined in section 3802(14) of this title, and in lieu thereof tax business machinery and equipment in accordance with section 3618 of this title.

There is no requirement under § 3602 that the property at issue be "affixed" to the real estate; it must merely be "fitted and attached" to a manufacturing plant. Nor is there a requirement that the property be incapable of being removed "without material injury" to the real property. In other words, the test for finding taxability as real estate under § 3602 is not that enunciated in the *Sherburne* or *Lyndonville* cases, both of which construed different provisions of the tax statute.

Here, the Board specifically found that the machines in question "were of special use design, set into place to obviously be permanent installations. The removal of these pieces would cause damage to the floor, walls or ceilings because of their size, shape or weight." Taxpayer's own exhibits reflected the clear integration of the machinery into the building housing it, and one of its witnesses confirmed the Board's findings about the difficulty of removing the machinery, although he added that removal was common practice. It is hardly disputable, given the Board's findings, that the machinery was "part of a manufacturing . . . plant" within the meaning of § 3602.

In reaching its decision, the Board incorrectly applied 32 V.S.A. § 3618's more stringent test to determine that the machinery at issue was taxable as real estate. Although the Board relied on the wrong provision in reaching its conclusion, as we have noted, this Court will not hesitate to uphold a decision which is correct even if the grounds stated in its support are erroneous. *Bills* v. *Wardsboro School District*, 150 Vt. 541, 544, 554 A.2d 673, 675 (1988); *Circus Studios, Ltd.* v. *Tufo*, 145 Vt. 219, 222, 485 A.2d 1261, 1263 (1984). The evidence fully supports the Board's conclusion that plaintiff's machinery was taxable as real estate under 32 V.S.A. § 3602.

## III.

■ Finally, taxpayer contends that the Board did not properly establish the fair market value of its machinery and equipment and other personal property. The Town as the taxing authority had the initial burden to produce evidence of valuation, with the ultimate burden of persuasion as to contested issues remaining with the taxpayer. *Sondergeld* v. *Town of Hubbardton*, 150 Vt. 565, 568, 556 A.2d 64, 66 (1988); *Rutland Country Club, Inc.* v. *City of Rutland*, 140 Vt. 142, 146, 436 A.2d 730, 732 (1981). As we

said in *Sondergeld*, the taxing authority may meet its burden of production "either by demonstrating that the appraisal method substantially complied with legal requirements or by introducing some independent evidence supporting its valuation." 150 Vt. at 570-71, 556 A.2d at 68. Taxpayer's position is that the Town did neither of these, and we agree.

The Board accepted figures for machinery and equipment which were determined for 1983 by mutual agreement between the Town and the taxpayer's comptroller, according to the testimony of a lister for the Town. The agreement was never reduced to writing, and the lister testified that the comptroller thereafter retired from Weyerhaeuser. The Board stated in its findings:

> The Board accepts that the agreements which were verbally concluded in 1983 between the Town and the Weyerhaeuser Co. were entered into in good faith by both parties.
>
> The Board also affirms that the Town was carrying out its responsibility in deliberating with the Comptroller of the Hancock Plant in an effort to arrive at fair and equitable valuations. The Weyerhaeuser plant is the only industry in the small town and it is a major one with a specialized operation. In the view of the Board the procedure followed was a reasonable approach, particularly since there are approximately 300 items in the plant complex of taxable status.

While taxpayer attempted to cast doubt over the existence of the agreement asserted by the Town, it was open to the Board to decide that such an agreement had been established. But nothing in the Board decision or the record indicates that any agreement for 1983 was extended to future years, nor does the Board imply that such further agreement existed.

The Board justified its use of the figures arising from the 1983 agreement on its finding that taxpayer's expert witness, who testified extensively about the fair market value of machinery and equipment, was not suitably qualified as an "expert in making appropriate differentiation and setting values on all [machinery and equipment] whether they are attached or unattached." Noting that taxpayer "did not present such an appraisal report prepared by an expert in [machinery and equipment] evaluation," the Board stated:

21. . . . With no other evidence to review in respect to these classifications of property the Board upholds the action of the Town in assessing M&E for the 1985 tax year on the basis of catergorizations established in Ex:T-10.

22. In determining whether or not the subject realty was assessed fairly the Board recognizes that the accrued depreciation for the subject realty as of 4-1-85 could not be measured reliably for each item by trending original cost to reproduction cost new. Data required to insure the accuracy of this method was either incomplete or unavaible. The kind of historical information needed for certain individual pieces was unattainable and no relevant market data was procurable.

On this basis the Town employed the direct method of measuring accrued depreciation with a lump sum deduction figure applied to the total valuation of all M&E realty identified in Ex T-10. The objective was to tax the Appellant's property proportionately equal in keeping with the standards of providing equality of assessments for Ad-Valorem taxation purposes.

Not only did the Town extrapolate from valuation figures reached by mutual consent for a prior tax year, and not extended beyond that year, but its methodology was, in its own words, not aimed at reaching the fair market valuation of the machinery and equipment. The Town instead arrived at a value by applying a "lump sum deduction figure" whose relationship to fair market value of the total machinery and equipment in 1985 is nowhere established.

We conclude that such evidence did not meet the Town's burden of production, *Sondergeld*, 150 Vt. at 568, 556 A.2d at 66, and that the matter should be remanded for consideration of the fair market value of the machinery and equipment. Though we need not reach the question of the relevance and materiality of the testimony offered by taxpayer's expert, since the Town did not meet its initial burden, it will aid in the deliberations on remand if we take this opportunity to comment upon questions which the Board raised about that testimony.

The qualifications of an expert witness are always a matter for the court, or administrative board, in the first instance. See *Cap-*

*piallo* v. *Northrup*, 150 Vt. 317, 319, 552 A.2d 415, 417 (1988). But here the Board completely rejected the extensive and detailed testimony of Alonzo F. Wetherington, Jr. about the fair market value of individual items and categories of machinery and equipment. The Board did so not because he was unqualified, but because in its estimation, Wetherington's figures were essentially based on the cost of removing equipment from the plant site and transporting it to ready markets for particular equipment, rather than on its value *in situ*, as part of a functioning production operation.

As to taxpayer's expert, the Board found:

> 24. The valuations itemized in the Wetherington Summaries are not regarded by the Board however as being dependable indices of M&E Fair Market Value. They represent the actual prices, from the perspective of the Investment Recovery Division [of Weyerhaeuser], that they would pay to acquire it for overhaul prior to placing it on the market.

And while the transcript does support the Town's argument that Wetherington was at times equivocal about whether his valuations as a whole were "at plant shutdown" or "going-operation" values, the record as a whole reflects that Wetherington distinguished between equipment which lost significant value when separated from the plant and equipment the value of which was established independently of its location:

> You take these other pieces out, now the big pieces I'm telling you are worth the same in the plant as they are to take them out and move them someplace so you can resell them. These little ones are worth something in the plant when it's working . . . .

The Board, as the trier of fact, was not bound to accept the evidence of either party, *Kruse* v. *Town of Westford*, 145 Vt. 368, 374, 488 A.2d 770, 774 (1985), but in performing its duty of sifting through the evidence in a complex tax appeal, *Corrette* v. *Town of St. Johnsbury*, 140 Vt. 315, 316, 437 A.2d 1112, 1113 (1981), it was bound to consider the evidence of the taxpayer's expert, rather than to discount his testimony entirely on the basis that a portion of it raised doubts in the minds of Board members. See *New England Telephone & Telegraph Co.* v. *Board of Assessors*

*of Boston*, 392 Mass. 865, 869-70, 468 N.E.2d 263, 266 (1984). The Board must explain its reasoning with sufficient clarity and particularity to enable this Court to review the findings and conclusions fairly and thoroughly. As stated in *Sondergeld*, "[t]he central question in all of these cases is whether the decision tells us 'how that decision was reached.'" 150 Vt. at 570, 556 A.2d at 67 (quoting *Saufroy* v. *Town of Danville*, 148 Vt. 624, 625, 538 A.2d 168, 168 (1987)). In a complex matter involving the valuation of many items, it is especially helpful to heed the message of *Sondergeld* and *Saufroy*.

*The cause is remanded to the Vermont State Board of Appraisers for findings on valuation of machinery and equipment. The judgment is otherwise affirmed.*