## Martin S. and Carolyn Harris v. Town of Waltham

[613 A.2d 696]

No. 90-328

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 22, 1992

*John B. Kassel* and *David W.M. Conard* of *Miller, Eggleston & Rosenberg, Ltd.*, Burlington, for Plaintiffs-Appellants.

*Andrew Jackson*, Middlebury, for Defendant-Appellee.

**Dooley, J.** Taxpayers, Martin and Carolyn Harris, appeal from a decision of the State Board of Appraisers setting the value of their residence and surrounding land in the Town of Waltham for 1989 at $155,400. We affirm.

The Town assessed the taxpayers' residence, outbuildings, and 130 acres at $98,738 in 1988. In 1989, the Town conducted a reappraisal because assessed values of land and buildings within the Town were substantially below fair market values as shown by property transfer tax returns for sales in towns in the immediate area. Land values were increased in accordance with a new schedule, and houses were generally increased 60% in value, after adjusting for physical changes in particular parcels.

Taxpayers appealed their 1989 valuation to the Board of Civil Authority (BCA). Their appeal letter stated that their land was overvalued as a result of the treatment of a parcel they had recently conveyed. Apparently both the parcel that was conveyed and the land they retained were valued at $160 per acre. Taxpayers' position to the BCA was that the most valuable portion of their land was the parcel they conveyed and the remainder should be valued at less than $160 per acre. During the BCA hearing, the listers explained their position on this claim and also stated that taxpayers' land was valued comparably to other land in the Town. The BCA rejected the appeal, stating: "Appeal denied. Assessment for land is similar to assessments of surrounding land."

After the BCA hearing, taxpayers obtained the Town appraisal cards for other property within the Town and determined that the BCA statement "turned out not to be true." They appealed to the Vermont Board of Appraisers stating that the appeal was "based on grounds of comparability." In the Board hearing, they attempted to show that in thirteen respects listing decisions were less favorable to them than to the other landowners. They reduced this to five complaints; all, except one they described as minor, dealt with the assessment of the land. They presented no evidence of fair market value, either of their properties or the properties to which they compared, and did not claim that their property was listed above fair market value.

Taxpayers raise two issues here: (1) the BCA failed to state the reasons for its decision as required by 32 V.S.A. § 4404(c) and therefore the value should remain at 1988 levels; and (2) the Board's findings on the fair market values of taxpayers' property and the comparable properties are erroneous. The Board found that taxpayers had waived the first issue they raised, although it also concluded that the BCA had not complied with § 4404(c). Taxpayers argue that the Board's decision on the violation of § 4404(c) is correct, but its waiver decision is erroneous. We conclude that the BCA did not violate § 4404(c) and accordingly do not reach the question of whether taxpayers waived this issue.[1]

---

[1] The dissent argues that we should not reach this issue because the Town failed to preserve it below and we do not have the benefit of full briefing of the issue. We disagree.

The Town had no opportunity to preserve the issue below because the Board announced at the beginning of the hearing that although the BCA explanation was inadequate the taxpayers had waived the issue. Thus, the issue had already been decided when the Town filed its proposed findings and conclusions stating its position.

In this Court, the taxpayers fully briefed the issue, recognizing that they would have to prevail on it to obtain relief. We have heard "reasoned arguments" from the party against whom we decide the question. The Town chose to defend the Board's decision on the grounds stated by the Board, a not uncommon situation in cases where we affirm a decision because the result is correct even though the reasoning is not. Further briefing of the issue by the Town would not aid our decision or reasoning.

The dissent suggests a narrow and inappropriate application of the "right

To consider the first issue, a brief history of the statutory requirements, and their interpretation in this Court, is in order. Until recently, § 4404(c) provided in relevant part:

The board [of civil authority] shall, within ten days from the time of the committee report, certify in writing its findings in the premises, and shall file such findings with the town clerk who shall thereupon record the same in the book wherein the appeal was recorded and forthwith notify the appellant in writing of the action of such board, by certified mail. If the board does not carry out the requirements of this subsection, the grand list of the appellant for the year for which appeal is being made shall remain at the amount set before the appealed change was made by the listers, . . . .

This Court decided two cases dealing with the statute's requirement that the BCA prepare findings. In *Punderson v. Town of Chittenden*, 136 Vt. 221, 388 A.2d 373 (1978), where the BCA issued a written decision without stating any reasons for the result, this Court held that the decision violated the statute because it did "not meet the underlying purpose of indicating to the parties, and to an appellate court, what was decided and upon what considerations." *Id.* at 225, 388 A.2d at 376. Based on that conclusion, we ordered that the sanction specified in § 4404(c) be imposed.

The second case is *Hojaboom v. Town of Swanton*, 141 Vt. 43, 442 A.2d 1301 (1982), which involved a number of property tax

result, wrong reason" principle that would cause us to reverse decisions we know to be correct for no good purpose. We often decide cases on grounds different from those used below with no consideration of whether our grounds were argued below. That result inevitably occurs when we overrule a decision of this Court since it was fruitless to present that ground to the lower court or agency. See, e.g., *Watker v. Vermont Parole Board*, 157 Vt. 72, 74, 596 A.2d 1277, 1278 (1991). Most visibly, it has occurred as we have developed state constitutional doctrine using grounds and distinctions not predicted by either the trial courts or the parties. See, e.g., *State v. Wright*, 157 Vt. 653, 654, 596 A.2d 925, 925 (1991); *State v. Brooks*, 157 Vt. 490, 493, 601 A.2d 963, 965 (1991). It would be particularly ironic if we were to apply it to property tax appeals where we routinely decide cases on issues never raised in the Board of Tax Appeals. See, e.g., *Vermont Electric Power Co. v. Town of Cavendish*, 158 Vt. 369, 373–74, 611 A.2d 389, 391–92 (1992) (Board of Tax Appeals affirmed for the right result, based on the wrong reason, with no indication that the Court's reason was raised below).

appeals in the Town of Swanton. In that case, the BCA purported to make findings, but they were very sketchy and did not address completely the issues raised. For one taxpayer, they said only, "Nice looking property," and "Discussed the land value of 140 per front foot a length." *Id.* at 48, 442 A.2d at 1304. For another, the BCA found, "Swamp is poor land," and explained its decision to slightly lower the value set by the listers as follows: "After considerable discussion of this and similar land motion was made and passed to do the following: 19.84 acre swamp x 400 and 25.02 acres at 651." *Id.* at 52, 442 A.2d at 1306. We held that the findings were inadequate because they did not meet the essential requirement of informing the taxpayer of the reasons for the decision.

Following *Hojaboom*, the Legislature amended the statute. In the first sentence quoted above, the requirement of "findings in the premises" was changed to "notice of decision, with reasons, in the premises." Where the second sentence imposed the sanction if the BCA "does not carry out the requirements of this subsection," the new version imposes the sanction only if the BCA "does not substantially comply with the requirements of this subsection." There is no question that the Legislature intended to overrule *Hojaboom* and *Punderson* at least in part. The sponsor of the amending legislation described the intent as changing those decisions, stating, "I would respectfully submit to the committee that there is not a board of civil authority in the state that is capable of satisfying that standard." Hearings on H.273 before the Senate Government Operations Comm. 4 (April 15, 1983) (testimony of Rep. Edward Zuccaro). This is our first occasion to consider § 4404(c) since the amendment.

The Board in this case quoted *Punderson* and found that the BCA decision did "not provide explanation to the Appellant of how precisely the final decision was determined."[2] Taxpayers amplify that the BCA failed to state how it valued taxpayers' buildings, as opposed to their land; did not specifically identify

---

[2] The dissent argues that we should defer to the Board's determination of the BCA's compliance with § 4404(c). The Board's determination is clearly based, however, on the preamendment language as applied in *Punderson*. We do not defer to an agency where its decision is based on an erroneous interpretation of statute. *Vermont State Employees' Ass'n v. State*, 151 Vt. 492, 493, 562 A.2d 1054, 1055 (1989).

the "surrounding land" or itemize its value; and did not determine the fair market value of taxpayers' land.

■ Whatever might have been the result under the *Punderson* standard, we conclude that the BCA met the present requirements of § 4404(c). Since the taxpayers' sole claim to the BCA was that they had been discriminated against compared to certain other named landowners, a determination that their assessment "is similar to assessments of surrounding land" is a sufficient explanation to comply with the statute. The BCA simply rejected their discrimination claim.

■ All of taxpayers' complaints to this Court about the BCA decision attack the *quality* of the decision.[3] Their complaints that the BCA failed to address the value of their building or to find fair market value are unavailing since taxpayers raised no issue about the buildings in the BCA and did not attack the listers' determination of fair market value. The other complaints involve the kind of detail that is no longer required after the amendments to § 4404(c).

The requirements of § 4404(c) are technical; taxpayers suffered no prejudice from any breach of them. Taxpayers' rights are fully protected by the de novo appeal to the Board. There is no claim that the reasons given by the BCA, however sparse, do not represent its actual determination of the issues raised by the taxpayers. BCA at least substantially complied with the statutory requirements.

---

[3] The dissent also attacks the quality of the BCA decision, necessarily arguing that § 4404(c) requires not only that the BCA state its reasons but also that it have good reasons. Its citation to a decision about the findings of the Board of Tax Appeals, *Saufroy v. Town of Danville,* 148 Vt. 624, 538 A.2d 168 (1987), suggests that we should apply to the BCA the standards we use for Board findings so we don't have "to speculate on how the [BCA] . . . reached its conclusion on fair market value." We doubt that a town of 454 residents, National Survey, Vermont Yearbook 1991–92 at 498 (1991), whose volunteer citizen board of civil authority hears a property tax appeal and files its decision within an hour of the start of the hearing, will ever provide a detailed explanation of its reasoning to meet the dissent's standards. In any event, we have no evidence that the Board failed to give a complete statement of its reasons in this case. Further, the sophistication of the BCA's statement matches the sophistication of the taxpayers' appeal. The statute requires that the BCA state *its* reasons; not the reasons that would have been used by a professional body, with the time for careful decision-making, and based on a focused and detailed appeal.

Taxpayers' second argument is that there is no evidence to support the Board's determination of fair market value of their property or the comparable properties. In support of this conclusion, they argue that they showed that the Town's land schedule used an impermissible sliding scale method of valuation, unrelated to fair market value, and thus overcame the presumption of validity of the Town's appraisal. Because the Town failed to support its valuation, taxpayers' claim the appraisal must be overturned.

■ ■ Taxpayers' position here is very different from their position before the Board. At the Board hearing, the following exchange took place between the chairman and Martin Harris:

Potter: Mr. Harris would you, would this property sell for $155,000?

Harris: That's not the question at hand.

Q: Yes it is to us.

A: No sir.

Q: It is to us. . . . This is what we have to work on.

A: No. There are two grounds on which I can base a complaint. One is, whether [it] is over fair market value. . . . And the other is whether it is being comparably treated. All the properties in this town are underappraised.

Q: . . . In order to know whether it is overappraised or not you first have to find fair market value. . . .

A: My complaint is not that this property is assessed over fair market value. My complaint is the second of the two complaints which I'm entitled to make that I'm not being appraised comparably with other people.

Taxpayers were correct that property valuation involves a two-step process: determination of fair market value and equalization. *Vermont Electric Power Co. v. Town of Cavendish*, 158 Vt. 369, 372, 611 A.2d 389, 391 (1992). Taxpayers conceded fair market value before the Board and based their claims solely on equalization. Having done so, they are in no position here to attack the Board's finding of the fair market value of their property.

*Affirmed.*

**Allen, C.J.**, dissenting. The majority affirms the decision of the State Board of Appraisers on the basis of a statutory argument not raised by the parties before the Board and not argued here. Without briefing or oral argument the majority interprets the statute in question in a manner that ignores its text in favor of a statement by one of its legislative proponents. That interpretation renders 32 V.S.A. § 4404(c) meaningless and the work of the Board of Civil Authority (BCA) insignificant because of the supposedly curative effect of de novo review by the State Board. I believe that the "curative effect" urged by the majority ignores the very essence of § 4404(c)—to encourage clear and candid decisions by BCAs—and undermines the strong sanction of previous-year valuations for failure to comply with its mandates. Finally, the most troublesome flaw in the majority position is that it misconstrues and minimizes the issue of discrimination, which lies at the heart of property tax disputes both as to initial valuation and equalization.

We have steadfastly held that claims raised for the first time on appeal will not be considered by this Court. *Varnum v. Varnum*, 155 Vt. 376, 382, 586 A.2d 1107, 1110 (1990). We bend the rule "in extreme and unusual circumstances," *id.*, particularly where "fundamental rights and interests are at stake." *Id.* at 383, 586 A.2d at 1111. The issue on which the majority decides the present case was not raised below by defendant Town of Waltham.[1] The State Board announced during the hearing that "the BCA report did not reflect the reasons for the change or the reasons for no change, [and] was without reasons." It was perhaps understandable that the Town did not contest the Board's finding that the BCA failed to give reasons, since the Board simultaneously announced that taxpayers had waived their rights under the statute. But the Town was on clear notice

---

[1] The majority states that "the taxpayers fully briefed the issue," but that is not the case. There is no mention anywhere in taxpayers' brief of the grounds on which the majority bases its decision. Taxpayers argued simply that the BCA "failed to give adequate reasons for its decision on the Harrises' appeal," which argument would have prevailed, according to the majority, but for § 4404(c) "as it is currently constructed." The majority's rationale is based entirely on the proposition that the amendment to the statute altered the duty of the BCA in a manner that affected the outcome of this case—a proposition that the Town did not raise and the taxpayers, contrary to the majority's statement, had no chance to refute.

that taxpayers were challenging the Board's waiver finding on appeal and nevertheless failed to raise the § 4404(c) issue either at hearing or on appeal. This Court should not do so sua sponte. See *Tallarico v. Brett*, 137 Vt. 52, 61, 400 A.2d 959, 965 (1979); *Keene v. Willis*, 128 Vt. 187, 188, 260 A.2d 371, 372 (1969).

A principal reason for not considering issues not presented by the parties at trial or in their briefs is the great risk of deciding important issues without hearing reasoned arguments on both sides of a question, especially a novel question. See *Favreau v. Miller*, 156 Vt. 222, 233, 591 A.2d 68, 75 (1991) (Dooley, J., dissenting). As the majority notes, we have not had occasion to consider § 4404(c) since it was amended following *Hojaboom v. Town of Swanton*, 141 Vt. 43, 442 A.2d 1301 (1982), and sound appellate practice should encourage us to wait until the issue is presented before we venture to judgment. I would await a case in which the effect of the legislative changes is briefed and argued.

I would distinguish what the majority has done in this case from the numerous instances in which we affirm a trial court ruling, even though the reasoning of the trial court or administrative body is wrong. In such cases the relevant legal issue has been preserved. It is only the trial court's rationale for resolving the issue that we differ with in this class of cases. For example, in *Vermont State Colleges Faculty Federation v. Vermont State Colleges*, 151 Vt. 457, 463, 561 A.2d 417, 421 (1989), the Court upheld the Labor Relations Board's affirmance of Vermont Technical College's (VTC's) denial of funds for a sabbatical. The Board had stated as its grounds the incorrect conclusion that no evidence had been presented of violations of two articles of the labor agreement. The Court instead interpreted the agreement, which was before it, as allowing VTC to grant prospective-only sabbaticals. In *Weyerhaeuser Co. v. Town of Hancock*, 151 Vt. 279, 283, 559 A.2d 158, 161 (1989), the issue was whether certain of the taxpayer's machines were taxable as real estate. The Board, erroneously applying 32 V.S.A. § 3618, rather than § 3602, concluded that they were. We affirmed because the result would have been the same under § 3602. Again, the legal basis for our decision was properly before us.

The majority asserts that "[t]he requirements of § 4404(c) are technical; the taxpayers suffered no prejudice from any

breach of them. The taxpayers' rights are fully protected by the de novo appeal to the Board." If the Legislature intended the Board to cure all "technical" omissions by BCAs, there would be no need for § 4404(c). It is clear in the context of this statute and others governing the conduct of municipal bodies that the intention of the Legislature is to encourage thorough and timely review for all taxpayers, not only for those few who appeal to the Board. 32 V.S.A. § 4404(c) imposes strictures both as to the time of decision and the inclusion of reasons. What is, or is not, substantial compliance with the statute is a question the Board is in a better position to answer than this Court. The tax appeal process before the BCA and the State Board is relatively informal and often conducted without the presence of attorneys for either the taxpayers or the town. This Court has in recent years shown deference to the Board in tax decisions. *Sondergeld v. Town of Hubbardton*, 150 Vt. 565, 571, 556 A.2d 64, 68 (1988). The Board is familiar with the quality of the "reasons" supplied by BCAs in cases like the present, since it deals with vast numbers of tax appeals, only a few of which are appealed and even fewer of which raise the question of how well a BCA has performed its duties.[2] The majority's decision, while pur-

---

[2] The majority states that "[t]he Board's determination is clearly based . . . on the preamendment language as applied in *Punderson*." The Board chairman stated that "the BCA report did not reflect the reasons for the change or the reasons for no change, [and] was without reasons." Only the amended version of § 4404(c) speaks of "reasons." The earlier version requires "findings in the premises." The Board's written decision states, "Subsection 4404(c) of VSA Title 32 specifies that the Board of civil Authority notice of decision be 'with reasons.'" It does not cite or rely on any preamendment cases.

More importantly, since no reasons whatever were offered, the Board's ruling on the BCA should stand under either version of the statute, though it seems clear that it was relying upon § 4404(c), as amended. The majority rescues the Town's position by demeaning its capacity: "We doubt that a town of 454 residents, . . . whose volunteer citizen board of civil authority hears a property tax appeal and files its decision within an hour of the start of the hearing, will ever provide a detailed explanation of its reasoning to meet the dissent's standards." It is the Legislature, not this Court, that has directed the Board of Civil Authority to give reasons, and a sociological exploration of the BCA's role and abilities is not within our charge.

I do not think, as the majority suggests, that the Legislature mandated that the BCA "provide a detailed explanation." It required only "reasons,"

porting to defer to a lay board (the BCA), questions the judgment and discretion of the State Board.

The majority states that the taxpayers' "sole claim" to the BCA was that they had been discriminated against, compared to certain other named landowners. The majority concludes that the BCA's explanation that the assessment "is similar to assessments of surrounding land" constituted "a sufficient explanation to comply with the statute." On the contrary, under either the former version of § 4404(c) or the present one, those words are merely tautological and provided no explanation whatever. A claim of discrimination by taxpayers *always* amounts to an assertion that the assessment is dissimilar (or disproportionate) to assessments of surrounding, or otherwise comparable, property, either because of an inconsistent initial valuation or because of misapplication of the municipality's equalization ratio. A contrary assertion does not provide a "reason" for the BCA's decision.

Discrimination is not the most important issue; it is the *only* issue, as our very substantial body of property tax decisions has shown over the years. The guiding statute, 32 V.S.A. § 4467, specifically refers to Chapter I, Article 9 of the Vermont Constitution and the Fourteenth Amendment to the United States Constitution, because of the role of those provisions in combatting state-sponsored discrimination of all kinds. See, e.g., *Alexander v. Town of Barton*, 152 Vt. 148, 158–60, 565 A.2d 1294, 1300–01 (1989). This Court now holds that the BCA meets the standard of the statute when it gives no more answer to taxpayers' claim that an assessment is dissimilar to assessments of surrounding land than the response, "the assessment is similar to assessments of surrounding land"—in other words, "You're wrong."[3] In *Saufroy v. Town of Danville*, 148 Vt. 624, 625, 538

———

and gave the State Board the power to judge whether reasons have been provided. I would simply hold what is clear—that the BCA did not give reasons, detailed or otherwise, and that the Board did not abuse its discretion in saying so.

[3] Just as important as this decision itself will be its effect on citizens and citizen boards trying to do their best in an area of the law that is inherently difficult, and especially so with statutes that would benefit from legislative

A.2d 168, 169 (1987), we condemned strikingly similar language used by the State Board in its decision in that case based, in part, on the Board's skimpy explanation that a comparable property offered by the town "defines the general range of the fair market value of the Saufroys' property." We said:

> Beyond a recognition in the findings that there were very significant differences between taxpayers' property and the comparable property, the Board offers no explanation how these differences cancel out so that the fair market values are identical. We are left to speculate on how the Board reached its conclusion on fair market value.

*Id.* at 625–26, 538 A.2d at 169. See also *Roy v. Town of Barnet*, 147 Vt. 551, 551–52, 522 A.2d 225, 226 (1986) (State Board has duty to make clear statements so that this Court and the parties will be able to determine how decision was reached); *Schweizer v. Town of Pomfret*, 134 Vt. 436, 437, 365 A.2d 134, 135 (1976) (Board has duty to make specific findings; to merely state that it "checked" the comparable properties constitutes reversible error). While the BCA is not to be held to the same standard of detail as the State Board, § 4404(c) requires an explanation of how the result was reached. Here, none was given.

I am authorized to say that Justice Gibson joins in this dissent.

---

review and clarification. Our point is not, as characterized by the majority, that § 4404(c) requires "not only that the BCA state its reasons but also that it have *good reasons*." We emphasize that the BCA gave no reasons—none, and for this Court to suggest that it did so will surely send all the wrong signals to a wide range of administrative boards from whom we do not demand eloquence or detail, but from whom we have long required *reasons* on behalf of the people they serve. This case is not about the difference between the standards applicable to the BCA and the State Board; it is about construing a mandate that a Vermont state board say *something*, as allowing the board to say nothing. We have set a standard that no board can now possibly fail to meet, but at some cost to the people they serve.