*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-308

APRIL TERM, 2012

| | | |
|---|---|---|
| Andrew Zoito, Jr. | } | APPEALED FROM: |
| | } | |
| | } | Property Valuation and Review |
| | } | |
| v. | } | |
| | } | |
| | } | |
| Town of Stamford | } | DOCKET NO. PVR 2010-92 |

In the above-entitled cause, the Clerk will enter:

Taxpayer appeals pro se from a decision of the state appraiser affirming the valuation of the board of civil authority of the Town of Stamford. We reverse and instruct the Town of Stamford to reinstate the 2009 listed value of taxpayer's property.

The property under appeal is a seventeen-acre undeveloped parcel with no legal deeded access. Taxpayer testified that he used the property principally for hunting. The record discloses that taxpayer purchased the property in 1976 at a tax sale. Its listed value in 2009 was $6800. Following a town wide reappraisal, the listed value was increased in 2010 to $13,300. In response to taxpayer's grievance, the board of listers reduced the property's land grade from .30 to .25, resulting in a reduction in value to $11,100. The board of civil authority sustained that amount, and taxpayer appealed to the state appraiser.

In the proceeding before the appraiser, the Town introduced the "Lister Card" for the property, which describes its size and grade, notes that the property is "wooded [with] poor access," and states its listed value as $11,100. The Town also introduced two emails to the Stamford lister that were sent in response to his inquiry seeking information about recent sales of landlocked land in other towns. The Town of St. Johnsbury responded that a fifty-acre parcel with no right of way had sold for about $1000 per acre. The email included no sale date or any further description of the parcel. The Town of Bethel responded with two sales: a 20.5 acre parcel described as "steep" that had sold in November 2008 for $34,167, or about $1600 per acre, and "an older not on the open market" sale of a 36.9 acre parcel in October 2005 for $34,167, or close to $1000 per acre. The appraiser noted that the subject property is assessed at about $652 per acre. The Town also introduced an undated letter from the Town's listers to the state appraiser explaining that, in response to a state mandated reappraisal, it had constructed a "new land schedule" which resulted in most lands within the Town increasing in value "at differing percentages." The letter also stated that the listers believed taxpayer's assessment to be "a fair one" in light of the fact that "[h]is land values were higher in the 80's than his current

value," he had used the property for hunting "for many years," most land values within the Town had increased, and properties similar to taxpayer's in other towns had sold "in the vicinity of $1000 per acre."

One of the Town's listers testified at the hearing. He stated that ninety-five percent of the properties in the Town saw an increase in listed value following the reappraisal. He acknowledged that the percentage of increase "varied, according to th[e] land schedule," but responded affirmatively when asked whether he believed that the subject property was "treated fairly and equitably."

Taxpayer submitted a number of exhibits, including principally a handwritten list of twelve other properties in the Town. The document purported to show for each property the percentage change in assessed value from 2009 to 2010; eight purportedly increased ten percent or less, one increased about fifty percent, two decreased in value, and one stayed the same. Taxpayer's percentage increase was about sixty-two percent. He testified at the hearing that he believed a fair value would be about $7500—roughly a ten percent increase.

In his written decision, the state appraiser found that the Town's evidence was "meager and wanting," observing that it "did not introduce any comparables, land schedules o[r] any data to support the subject valuation." As to the email responses from St. Johnsbury and Bethel, the state appraiser found that, without supporting documentation and more specific data, the information was useless for comparative purposes. Notwithstanding the lack of evidence, however, the appraiser ruled that the burden of persuasion remains with the taxpayer to show that the property is overvalued, and that taxpayer had not met this burden, observing that taxpayer's evidence concerning the twelve properties with differing percentage increases lacked sufficient detail to be useful for comparative purposes. Accordingly, the appraiser affirmed the Town's listing at $11,100. Taxpayer appealed.

This Court reviews decisions by the state appraiser to ensure that they are supported by findings rationally drawn from the evidence, conclusions supported by the findings, and a correct interpretation of the law. Barrett v. Town of Warren, 2005 VT 107, ¶ 5, 179 Vt. 134; see also Saufroy v. Town of Danville, 148 Vt. 624, 625 (1987) (conclusions of Board of Appraisers must be supported by sufficient findings of fact).

In Sondergeld v. Town of Hubbardton, 150 Vt. 565 (1988) we explained that in a property tax appeal to the state appraiser, the town bears the initial burden of producing evidence of fair market value. Id. at 567. However, once the taxing authority meets its initial burden to produce evidence supporting its valuation, "the taxpayer retains the burden of persuasion as to contested issues." Id. at 568. As to the town's threshold burden, we noted that the taxing authority can meet its burden of production "either by demonstrating that the appraisal method substantially complied with legal requirements or by introducing some independent evidence supporting its valuation." Id. at 570-71. The initial burden of production, we explained, is not a heavy one, requiring only that the town produce some "reliable and admissible evidence" establishing fair market value. Id. at 571; see also Barrett, 2005 VT 107, ¶ 7 ("The Town had the initial burden of production with respect to fair market value."); Weyerhaeuser Co. v. Town of Hancock, 151 Vt. 279, 283 (1989) ("The Town as the taxing authority had the initial burden to

2

produce evidence of valuation, with the ultimate burden of persuasion as to contested issues remaining with the taxpayer.").

While the town's burden of production may be relatively light, it is not a nullity. Thus, in Sondergeld, which concerned a property on Lake Beebe, we held that the town met its burden of production by producing a land schedule supporting its valuation of the lakefront property. 150 Vt. at 567. In that case, the town's schedule was based on schedules produced by the state, and modified by the Town, showing per foot frontage values for Lake Beebe and two other lakes with shoreline in Hubbardton. Id. We noted that the State data from which the town's figures derived were based on sales and therefore reflected appraised valuation within the meaning of the statutory scheme, which mandates a fair market value approach. Id. In Barrett, we held that the Town met its burden of establishing the fair market value of taxpayer's condominium by producing evidence of the average record sales prices of other condominiums in the complex. 2005 VT 107, ¶ 7.

In contrast, in Weyerhaeuser, we held that the "evidence did not meet the Town's burden of production" with respect to the fair market value of certain machinery and equipment in a manufacturing plant. 151 Vt. at 285. The only evidence offered by the town was testimony that it had extrapolated fair market value from an oral agreement with the manufacturer concerning the equipment's value for an earlier tax year and had accounted for depreciation by applying a lump sum deduction "whose relationship to fair market value of the total machinery and equipment in 1985 is nowhere established." Id. We concluded, therefore, that the matter had to be remanded for consideration of the fair market value of the machinery and equipment. Id.

Here, as the state appraiser expressly found, the Town's evidence was similarly "meager and wanting." The emails from listers in two other towns, as the state appraiser found, failed to contain sufficient information to establish comparable values, and the town did not introduce any comparables. Although the town asserted that it relied on land schedules in connection with its 2009 reappraisal, including its valuation of taxpayer's land, the town did not offer any land schedule into evidence, did not explain how the land schedules were derived, and did not produce any evidence, as in the Sondergold case, above, connecting the land schedule on which the Town said it relied with an analysis of fair market value. On this record, we conclude that the Town has not met its burden.

Taxpayer's evidence, as the appraiser found, was similarly inadequate. Although taxpayer presented evidence concerning utility rights of way and access issues, he did not demonstrate the impact, if any, of those factors on the fair market value of his property. The list of twelve other properties in town, showing varying percentage increases in appraised value relative to the increase in taxpayer's, contained no supporting documentation to enable the state appraiser to determine the relevance of those other assessments. While taxpayer was competent to state his opinion about the property's value, 12 V.S.A. § 1604, the appraiser was not required to credit it, cf. State Housing Auth. v. Town of Northfield, 2007 VT 63, ¶ 10, 182 Vt. 90 (holding that appraiser properly relied on owner's opinion of value where she "stated her belief in the appraised value, and offered evidence to support her opinion").

Because the Town failed to meet its burden of production supporting its increase of the listed value of taxpayer's property, we conclude that the decision below must be reversed with an

order that the Town set taxpayer's property at the valuation that was in effect prior to the Town's increased assessment—its listed value in 2009.  See <u>Bloomer v. Town of Danby</u>, 135 Vt. 56, 58 (1977) (Where town fails to meet its burden justifying assessment increase, taxpayer "entitled to a decision in his favor reinstating his grand list figure at the assessment for the previous year.").

<u>Reversed with instructions to the Town of Stamford to reinstate the 2009 listed value of taxpayer's property</u>.


BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice

4