## Grand Union Company v. City of Winooski

[566 A.2d 398]

No. 88-018

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed November 4, 1988

Motion for Reargument Denied July 25, 1989

*W. Owen Jenkins*, Essex Junction, for Plaintiff-Appellant.

*William E. Wargo*, City Attorney, Winooski, for Defendant-Appellee.

**Allen, C.J.** This is an appeal by the Grand Union Company from a decision of the State Board of Appraisers affirming the decision of the Board of Civil Authority and assessing taxpayer's personal property in the City of Winooski at $40,702. We affirm.

The personal property consists of machinery and business equipment taxed by the City in accordance with 32 V.S.A. § 3618, which provides for an alternate method of taxation when the inventory tax has been eliminated. See 32 V.S.A. § 3617. There is no dispute that the City's inventory tax was eliminated for the April 1, 1986 grand list and that the correct appraisal value of taxpayer's machinery and business equipment, based on net book value, was $40,702. But taxpayer argues that the listed value to fair market value ratio prevailing in the municipality—the "equalization ratio"—should be applied to the valuation calculated under § 3618, to assure the uniform assessment mandated by 32 V.S.A. § 4467.

In *Town of Barnet v. Palazzi Corp.*, 135 Vt. 298, 376 A.2d 24 (1977), this Court held that real and personal property must be treated on the same basis, and that applying a different equalization ratio to real and personal property would violate the statutory and constitutional mandate of equality. Real and personal property had to be treated alike for equalization purposes in *Palazzi* because both were valued at fair market value. When Winooski elected an alternative method of taxation for business machinery and eq̲uipment, it departed from fair market valuation and necessarily adopted the appraisal methods mandated by 32 V.S.A. § 3618(a). That provision gives the taxpayer the option between two methods, one based on cost, the other on net book value.* Taxpayer elected to have its business personal property appraised at its net book value, which is the cost of the property "less depreciation of the property as shown on the federal income tax return required to be filed with the federal authorities on or nearest in advance of April 1 in any year." 32 V.S.A. § 3618(c)(2).

Though the taxpayer in its brief states that it "submitted to the Board of Listers its depreciated value as its opinion of the fair market value of the property," neither statutory option in § 3618(a) relates to fair market value. Cost and fair market value are not the same. See *In re Heath*, 128 Vt. 519, 524, 266 A.2d 812, 816 (1970). As one court has put it:

---

* § 3618 provides: (a) Subject to approval of the voters of a municipality pursuant to section 3617 of this title business personal property shall be appraised for any taxable year according to either of the following methods, which may be elected at the option of the taxpayer:

(1) At fifty percent of its cost during the time that it has not been fully depreciated for federal income tax purposes under the laws of the United States. After the property has been thus depreciated, exclusive of salvage value, for federal income tax purposes, it shall be appraised at ten percent of its cost; .

(2) At its net book value during the time that it has not been depreciated to ten percent of its cost or less for federal income tax purposes under the laws of the United States. After the property has been depreciated to ten percent of its cost or less, exclusive of salvage value, for federal income tax purposes, it shall be appraised at ten percent of its cost. Business personal property manufactured by the taxpayer for his own use, shall be valued at the net book value for federal income tax purposes under the laws of the United States. After the property has been depreciated to ten percent of its cost or less, exclusive of salvage value, for federal income tax purposes, it shall be appraised at ten percent of its cost.

The book value of an asset ordinarily merely represents the cost of that asset. Such book value may be reduced by book entries for depreciation or obsolescence but, except as reserves may be set up to recognize decreases in value, the rise or fall in value of an asset is not usually recognized by its book value. Thus, the book value of an asset at any given time may be more or less than its value.

*Opdyke v. Security Savings & Loan Co.*, 157 Ohio St. 121, 148–49, 105 N.E.2d 9, 24 (1952).

The equalization process recognizes that the market values tend to stray from listed values. An equalization ratio relates "the rise or fall in value" of properties within a town or city to listed values and then conforms the value of a subject property to that ratio, so its listed value will correspond to the listed values of comparable properties. 32 V.S.A. § 4467; see *Bookstaver v. Town of Westminster,* 131 Vt. 133, 142–43, 300 A.2d 891, 896 (1973). But where a fixed value like net book value is the basis for appraisal of property, no "rise or fall in value" will affect that appraisal, and equalization ratios applicable to market value properties are immaterial.

Given the net book value appraisal of its property, not only is equalization unnecessary to achieve fairness for this taxpayer, but attempting to equalize the results of two inherently different appraisal methods would produce an irrational, and inherently unfair, result. The function of the State Board of Appraisers is to "determine the correct valuation of the property ... [taking] into account the requirements of the law as to valuation ...." 32 V.S.A. § 4467. The value arrived at is in compliance with the dictates of 32 V.S.A. § 3618(a)(2).

*Affirmed.*