## Vermont Electric Power Company, Inc. v. Town of Cavendish

[611 A.2d 389]

No. 91-003

Present: **Allen, C.J., Gibson, Dooley and Morse, JJ.**

Opinion Filed April 3, 1992

Motion for Reargument Denied May 1, 1992

*Thomas N. Wies*, Rutland, and *Markus Brakhan* (On the Brief), Burlington, for Plaintiff-Appellee.

*Stephen C. Walke, Jr.* and *Ralph W. Howe III* of *Paterson & Walke, P.C.*, Montpelier, for Defendant-Appellant.

*Deborah L. Markowitz,* Montpelier, for amicus curiae Vermont League of Cities and Towns.

**Allen, C.J.** The Town of Cavendish appeals from a decision by the State Board of Appraisers (Board) applying the Town's average equalization ratio to Vermont Electric Power Company (VELCO) property. We affirm the decision and reject the Town's contention that VELCO's property should be listed at one hundred percent of fair market value.

VELCO owns property in Cavendish consisting of land, high-voltage transmission lines, substations, poles, and related utility facilities. In April of 1990, the Town's board of listers appraised and listed that property, not including the land, at $6,560,200. Hearings before the local board of civil authority did not result in any change to either the appraised or listed value, and VELCO appealed to the State Board of Appraisers. The Board, using the "Handy-Whitman/Iowa Curve" formula, established the fair market value of the subject property at $6,035,388, and neither party disputes that figure. The instant case centers around the Board's application of the Town's average equalization ratio (AER) of 66.23 percent to the fair market value, which resulted in a listed value of $3,997,237.

The parties and the Board agree that, given the absence of sales transactions involving utility property, the proper appraisal method for the VELCO property required application of the formula. This formula starts with the original cost of the property and then applies the Handy-Whitman index, which is updated regularly and adjusted for different regions of the country, to approximate replacement cost. Depreciation is then calculated according to the Iowa Curve, which reflects the remaining life of utility property. This methodology provides a fair market value referred to as "depreciated replacement cost." In this case, that figure was $6,035,388.

VELCO argued to the Board that its property was unique in Cavendish and the Board must, in the interest of equal treatment, apply the Town's AER of 66.23 percent as calculated by the Vermont Division of Property Valuation and Review. The Board found that VELCO's property was not unique within the Town, noting that Central Vermont Public Service (CVPS) had similar, although not identical, property in Cavendish. It none-

theless found that the AER should be applied, relying upon a 1985 stipulation between Cavendish and CVPS[1] whereby the Town agreed to apply its AER to CVPS property for listing purposes.

On appeal, the Town makes three arguments. First, it contends that the Board erred in applying its AER to VELCO property because that ratio was not in fact applied to CVPS property. Second, the Town argues that VELCO failed to meet its burden of establishing that its property was listed at a higher percentage of fair market value than comparable property in Cavendish. Finally, the Town, joined by amicus Vermont League of Cities and Towns (VLCT), argues that 32 V.S.A. § 3620 and 32 V.S.A. § 3481 require that utility property be listed at full fair market value.

## I.

The Town's first argument is that the Board erred in applying Cavendish's AER to VELCO's property because the Board found that the property was not unique. Vermont law, it argues, required the Board to apply the equalization ratio applicable to comparable property. Because Cavendish listed CVPS property at 100% of fair market value, despite the agreement to the contrary, the Town maintains that it must also list VELCO property at full value. VELCO counters that its property is unique and that application of the Town's AER is therefore required.

 When reviewing tax assessments, the Board's function is to "determine whether the listed value of the property corresponds to the listed value of comparable properties within the town." *Kachadorian v. Town of Woodstock*, 149 Vt. 446, 447, 545 A.2d 509, 510 (1988). This determination requires two steps: the establishment of fair market value and equalization of that value to insure the comparable listing of comparable properties. *Id.* If comparable properties exist within the town, a com-

---

[1] Paragraph 5 of that stipulation reads:
As of April 1, 1985 and for each real estate tax year thereafter the fair market value of Central Vermont's property shall be [established using the Handy-Whitman/Iowa Curve formula]. The property shall be set in the Town's Grand List at that fair market value as equalized based upon the average equalization ratio for the Town as published by the Vermont Department of Property Valuation and Review.

parison is made between current market value and listed value to determine the equalization ratio. *Id.* Constitutional considerations of equal protection and proportional contribution require the Board to apply that ratio to the subject property to ascertain its listed value. *Royal Parke Corp. v. Town of Essex,* 145 Vt. 376, 380, 488 A.2d.766, 769 (1985); 32 V.S.A. § 4467. Where the Board concludes that it lacks a statistically representative sample of comparable property, it may use other evidence to determine the appropriate equalization ratio. *Philbin v. Town of St. George,* 156 Vt. 640, 641, 588 A.2d 1060, 1061 (1991). If the property is unique within the town, however, its listed value is determined by applying an average of the equalization ratios for all properties in the town. *Kachadorian,* 149 Vt. at 448, 545 A.2d at 510.

■ Here, the Board properly established fair market value of the VELCO property, and neither party disputes that value. The Board then found that CVPS owned comparable property in Cavendish and concluded that the VELCO property was not unique. We agree with this conclusion because, for equalization purposes, "'comparable properties within the town' means properties of the same general class as the subject propert[y], even if [those] properties . . . would not meet the initial valuation comparability criteria on the basis of factors like building size, age, description, condition, use, income and expenses, and surroundings." *Philbin,* 156 Vt. at 640–41, 588 A.2d at 1061. The evidence of value was, however, limited to the other utility property within the Town. The Board found that there were differences between the properties of the two utilities but concluded that the differences were not sufficient to qualify the VELCO property as unique. The Board then cited the stipulation between CVPS and the Town, in which the Town agreed to apply its AER to the CVPS property for each year beginning in 1985, and found that equitable treatment of CVPS and VELCO required the application of the AER to VELCO's property.

■ It was erroneous for the Board to consider only utility property as comparable to determine the appropriate equalization ratio, but we affirm the decision because the Board applied the proper ratio, albeit for the wrong reason. In the absence of evidence of sufficient comparables, the Board should have looked to other relevant evidence in considering whether Cav-

endish properly listed VELCO's property. *Philbin*, 156 Vt. at 641, 588 A.2d at 1061 (Board has discretion to use other evidence to determine equalization ratio when it lacks sufficient comparables). In this case, there was other relevant evidence. VELCO introduced evidence before the Board, undisputed by the Town, that the AER for Cavendish was 66.23 percent. That evidence, given the dearth of comparables, was all that was available to determine the appropriate equalization ratio to apply to the VELCO property. See *McKnight Shopping Center, Inc. v. Board of Property Assessment*, 417 Pa. 234, 242, 209 A.2d 389, 393 (1965) (in seeking uniformity of taxing ratios, all properties are relevant and comparable). Thus, although the Board erred in basing its decision on one comparable, it arrived at the proper and equitable result when it applied Cavendish's AER to the VELCO property. We will affirm a proper administrative decision even if the grounds stated in its support are erroneous. See *Vermont State Colleges Faculty Federation v. Vermont State Colleges*, 151 Vt. 457, 463, 561 A.2d 417, 421 (1989). We note that whether the Town actually applied its AER to CVPS property is largely irrelevant given the absence of other comparable properties in Cavendish.[2] In such situations, the Board must look elsewhere for evidence of the proper equalization ratio. Because property taxation rests on notions of equity and fairness, there is no better evidence than the average equalization ratio for all property within the Town.

## II.

The Town and VLCT argue that 32 V.S.A. § 3620[3] creates a separate class of property which must be listed at full fair market value in accordance with § 3481.[4] They maintain that 32

---

[2] For this reason, we need not reach the Town's second argument—that VELCO failed to meet its burden of demonstrating that its property was listed at a higher percentage than comparable property. Whether Cavendish actually applied its AER to CVPS property is of little relevance given the statistically insignificant sample of comparable property.

[3] Section 3620 provides: "Electric utility poles, lines and fixtures owned by nonmunicipal utilities shall be taxed at appraisal value as defined by section 3481 of this title."

[4] Section 3481(1) defines "Appraisal value" as "the estimated fair market

V.S.A. § 4467,[5] which requires the Board and courts to apply equalization ratios to uphold constitutional considerations of proportional contribution and equal protection, has no application to utility property which is "equalized" statewide by virtue of the appraisal methodology and the requirements of §§ 3620 and 3481.

We agree that § 3620, on its face, states that utility property be taxed at full fair market value. We disagree, however, that the statute creates a separate class of property exempt from the application of equalization ratios.

Although the Town and VLCT ground their argument on the "plain language" of the statute, nowhere in § 3620's brief text can we find any words suggesting the purpose to create a separate class of property. A review of legislative history reveals, instead, the purpose to ameliorate the effects of a decision by this Court, *Village of Lyndonville v. Town of Burke*, 146 Vt. 435, 440, 505 A.2d 1207, 1210 (1985), in which we held that certain utility property should be taxed as business personalty in accordance with 32 V.S.A. §§ 3617 and 3618 rather than as realty. Because § 3618 permits owners of business personalty to elect appraisal at fifty percent of cost or at net book value, 32 V.S.A. § 3618(a)(1) & (2), either of which yields a value substantially less than fair market value, that decision resulted in a potentially severe loss of tax revenues for towns. See Hearings on H.772 Before the Senate Finance Committee, April 11, 1986 (comments of Arthur Ristau, Director of Vermont Property Valuation and Review Division). Mr. Ristau estimated that if towns taxed utility property as personalty rather than as realty, they could lose between seventy-five and eighty percent of their revenue from that property. *Id.* Other testimony at the hearing

value." Section 3481(2) defines "Listed value" as "an amount equal to 100 percent of the appraisal value."

[5] Section 4467 provides, in part:
The state board or court shall take into account the requirements of law as to valuation, and the provisions of Chapter I, Article 9 of the Constitution of Vermont [proportional contribution] and the 14th Amendment to the Constitution of the United States [equal protection]. If the board or court finds that the listed value of the property subject to appeal does not correspond to the listed value of comparable properties within the town, the board or court shall set said property in the list at a corresponding value.

made clear that the purpose of § 3620 was to rectify that situation by requiring towns to tax utility property at fair market value. We find no evidence, however, that the Legislature intended to create a separate class of property to be taxed at full fair market value, without the application of the appropriate equalization ratio.

■ Furthermore, § 3620 must be considered in the context of the Vermont property tax scheme. Although the statute facially requires taxation at fair market value, our system favors constitutional considerations of proportional contribution[6] and equal protection[7] over statutory listing mandates. 32 V.S.A. § 4467 requires the Board and state courts, in deference to these constitutional considerations, to equalize listings so that taxpayers of comparable properties pay equitable and proportional taxes. See also *Royal Parke*, 145 Vt. at 380, 488 A.2d at 769 (although towns not free to ignore 100 percent requirement under 32 V.S.A. § 3481(2), constitutional compulsion requires a general discounting of taxable property); *Town of Barnet v. Palazzi Corp.*, 135 Vt. 298, 302, 376 A.2d 24, 27 (1977) ("constitutional requirement of uniformity takes precedence over a legislative directive to list at a fixed percentage of fair market value"); *New England Power Co. v. Town of Barnet*, 134 Vt. 498, 509, 367 A.2d 1363, 1370 (1976) (uniformity and equitability of appraisals more important than precise adherence to market value). Thus, although the Legislature directs that utility property—indeed most property, see 32 V.S.A. § 3481(2)— be taxed at fair market value, this directive must yield to the constitutional and equitable considerations set forth in § 4467. We are unpersuaded that § 3620 exempts utility property from this scheme and therefore hold that towns must apply equalization ratios to such property, just as they must to other property.

■ We are also unpersuaded by the argument by the Town and VLCT, based on our holding in *Grand Union Co. v. City of Winooski*, 152 Vt. 193, 566 A.2d 398 (1988), that equalization ratios have no application where fair market value is established by methods other than by review of sales of comparable properties. In that case, we held that equalization ratios were

---

[6] See Vt. Const. ch. I, art. 9.

[7] See U.S. Const. amend. XIV.

inapplicable to appraisals of business personalty calculated in accordance with 32 V.S.A. § 3618. *Id.* at 195, 566 A.2d at 399. We noted that neither valuation option under § 3618, fifty percent of cost or net book value, relates to fair market value. *Id.* at 194, 566 A.2d at 399. We concluded that attempting to equalize property appraised using those methods with property appraised at fair market value would "produce an irrational, and inherently unfair, result." *Id.* at 195, 566 A.2d at 399.

*Grand Union* is readily distinguishable. In the instant matter, the appraisal was not based on a fixed percentage of cost or a net book value, but rather on the Whitman-Handy/Iowa Curve formula. That formula, as found by the Board, applies an adjusted index sensitive to current replacement costs and regional factors, as well as a depreciation factor based on the remaining useful life of utility property. See *New England Power Co.*, 134 Vt. at 506, 367 A.2d at 1368 (approving utility property appraisal based on original cost, trended by a reliable index, less appropriate depreciation). It produces a value that the parties agree reflects fair market value. Thus, unlike the *Grand Union* case, which involved arbitrary, fixed valuation based on cost, the instant matter involves an accepted appraisal of actual fair market value. Because other property within Cavendish is also valued at fair market value, the Board was not attempting to equalize inherently different appraisal methods when it applied the AER to VELCO's property. The Whitman-Handy/Iowa Curve formula yields fair market value equivalents, and our rationale in *Grand Union*, 152 Vt. at 195, 566 A.2d at 399—that fixed values are not affected by the "rise and fall" in property values—does not hold here. Where equalization ratios are applied to property assessed at fair market value, the constitutional considerations previously discussed require that they be applied to all property so valued.

*Affirmed.*