# Knollwood Building Condominiums, et al. v. Town of Rutland

[699 A.2d 31]

Nos. 94-443, 94-540, 94-541, 94-542, 94-544 & 94-545

Present: **Allen, C.J., Gibson, Dooley and Morse, JJ., and Martin, Supr. J., Specially Assigned**

Opinion Filed May 16, 1997

Motion for Reargument Denied July 7, 1997

530

*Thomas M. Dowling* and *Kimberly K. Hayden* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Plaintiffs-Appellees.

*Mark L. Sperry* and *F. Rendol Barlow* of *Langrock Sperry & Wool*, Middlebury, for Defendant-Appellant.

**Dooley, J.** The Town of Rutland appeals from decisions of the State Board of Appraisers in six cases reversing the decisions of the Town Board of Civil Authority (BCA) for the 1993 grand list. Because the analysis in the six cases is identical, we refer to these decisions generally as *Knollwood Building Condominiums v. Town of Rutland.*[1] On appeal, the Town contests the Board's decision that equal protection principles barred the Town from applying separate equalization ratios to separate classes of property, where the Town had not conducted a town-wide reappraisal since 1968; the Town also contests the Board's jurisdiction to render such a decision. The taxpayers cross-appeal the Board's adoption of a 27.63% equalization rate, arguing that using an overall ratio that included both real and personal property was erroneous and that the proper uniform rate should have been 20%. We affirm the decision in part and reverse it in part.

## I. Facts

Appellees are commercial and industrial taxpayers.[2] Each grieved its 1993 assessment with the town listers, who applied an appraisal

---

[1] These cases were combined for argument with *Qualitad Sales Corp. v. Town of Rutland*, No. 95-270. The companion case was settled by the taxpayer and Town and is no longer before us.

[2] American Resources Corporation owns and operates a Holiday Inn in the Town. Central Vermont Public Service Corporation has its home offices, service center, hydropower production facilities, transmission plant, distribution plant and personal property in the Town. Hogge Penny Inn Unit Owners are owners of forty-eight units

methodology that has been in continuous use since 1968, when town properties were last reappraised. Under this methodology, all real property is valued in accordance with a 1967 cost manual on which the 1968 reappraisal was based. Thus, irrespective of when any buildings were built, all real property is appraised to produce its fair market value as if the year of appraisal were 1968, using cost and value data from 1967.

The method for appraisal of personal property is starkly different. The Town set personal property in the 1993 grand list at 100% of fair market value, based on figures reported by business taxpayers on their inventory forms, and transferred them to the grand list without adjustment, other than to correct simple mathematical errors. As would be expected, the methodology results in higher assessments for personal property in relation to current fair market value than for real property.

The system also produces unequal assessments among types of real property. Both the taxpayers and the Town offered evidence of median equalization ratios for the different classes of real property. By "equalization ratio," we mean the ratio between listed value and fair market value as of 1993, the year of property tax assessment. The following are the ratios advanced by the Town for real and personal property:

| Classification | Equalization Ratio |
| --- | --- |
| Residential | 20.88% |
| Commercial | 27.85% |
| Industrial | 44.90% |
| Overall real property | 22.84% |
| Personal property | 100.00% |
| Overall, real/personal | 31.51% |

The appeals involved both real and personal property. The fair market and initial listed values of the properties for each of these taxpayers are shown in the following table.

---

of a fifty-six-unit complex in the Town of Rutland and the Town of Mendon, whose appeals were consolidated into a single case before the Board. Knollwood office condominium units consist of eleven different office condominiums in a single structure in the Town, and their appeals were also consolidated. Sto Corporation is an industrial facility in the Town. Vermont Electric Power Company, Inc. is a utility whose property in the Town consists of its home office, transmission plant and personal property.

| Taxpayer | Real | Personal | Real & Personal |
|---|---|---|---|
| American Resources | 1,918,650 | 215,580 | |
| CVPS | | | 6,843,000 |
| Hogge Penny Owners Ass'n | 20,000 (per unit) | 38,000 (all units) | |
| Hogge Penny Unit Owners | 25,300 | | |
| Knollwood Office Condominiums | | | |
| Roger A. Olson #1 | 10,800 | | |
| Marble Bank #2 | 9,600 | | |
| Marble Bank #3 | 30,270 | | |
| Eugene Karol #4 | 9,750 | | |
| Thomas J. LaPlaca #5 | 21,900 | | |
| William A. Matthews #6 | 4,650 | | |
| Robert C. Bienieki #7 | 4,350 | | |
| Ray Ault #8 | 21,263 | | |
| Marble Bank #9 | 13,100 | | |
| Marble Bank #10 | 6,420 | | |
| Marble Bank #11 | 6,675 | | |
| Sto | 480,050 | 1,782,177 | |
| VELCO | | | 2,620,604 |

With respect to the valuation of personal property, all of the taxpayers who had such property argued that the different treatment of real and personal property violates 32 V.S.A. § 3481, Chapter I, Article 9 of the Vermont Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. They made a similar argument with respect to real property asserting that the passage of time without a reappraisal had led to

discriminatory assessments. On average the values of industrial and commercial properties had not risen as fast as the values of residential properties so that the 1967 values on which the Town relied were a higher percentage of current fair market value for commercial and industrial properties. Taxpayers argued that the difference in equalization ratios, under the circumstances of the case, violated the applicable Vermont listing statute, 32 V.S.A. § 4601, the Proportional Contribution Clause of Chapter I, Article 9 of the Vermont Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. They argued for use of the equalization ratio for all real property in the Town, as developed by their expert.

For purposes of this appeal, the parties have agreed to the fair market values for the properties before the Board. The taxpayers relied on a study of 166 property sales that occurred between 1987 and 1994. The Town relied on separate studies for commercial and industrial properties, developing separate equalization ratios for each class based on six properties of each type. The Board rejected the taxpayers' evidence for a variety of reasons discussed below. The Board rejected the Town's evidence because of the small sample used and the fact that some of the comparables used by the Town were under appeal to the Board.

The Board held:

> The Board is . . . constrained from determining an accurate assessment value of the subject property employing ratios for classes of property in the Town because of a lack of sufficient comparable data or a statistically representative sample of comparable properties in the Town. It thus appears to the Board that the appropriate methodology to arrive at a proper assessment value for the subject property is to employ the average equalization ratio for the entire Town.[3]

It decided to use the overall equalization ratio for all property in the Town as determined by the Division of Property Valuation and Review (PV&R) of the Vermont Tax Department. It applied this ratio, 27.63%, to all real and personal property in each case.

The Town appeals from the Board's orders, asserting numerous claims of error, as noted below. The taxpayers cross-appeal, arguing

---

[3] This paragraph appears in each of the Board's decisions.

that the Board should have adopted the equalization ratio advocated by their expert witness.

## II. Jurisdiction

The Town argues that the Board did not have jurisdiction to reach the decision it did. In making this argument, it relies on the wording of the property tax appeal statute, 32 V.S.A. § 4461(a), as interpreted by this Court in *Alexander v. Town of Barton*, 152 Vt. 148, 151-55, 565 A.2d 1294, 1296-98 (1989). In that case, the taxpayers, who owned a vacation home, attacked the Town's action of reappraising vacation homes without reappraising other properties. We held that the attack could not be launched before the State Board of Appraisers because the Board's jurisdiction is limited by 32 V.S.A. § 4467 and the statute allows the Board to equalize property values only to "comparable properties within the town." See *id.* at 153, 565 A.2d at 1297. The taxpayers' challenge sought equalization with properties that were not comparable because they were in a different class, and thus the Board had no jurisdiction to consider the challenge. *Id.* at 154, 565 A.2d at 1297-98. The Town of Rutland argues that *Alexander* prevents the Board in this case from comparing assessments of properties in different classes, as it did.

■ We do not think these cases are governed by the *Alexander* jurisdictional holding. Taxpayers' attack on the differential listing of real and personal property is based on a statute, 32 V.S.A. § 3481. This challenge asks the court to follow the dictates of § 4467, not to war with them. *Alexander* does not prevent this challenge.

As to real property, the taxpayers asked the Board to set their property in the list at a value corresponding to the properties they viewed as comparables. It is undisputed that the Town does not list properties based on current fair market value, reduced by an equalization ratio. To the extent its method of listing — by determining a fair market value as of 1967 — produces a correct result, it is a matter of sheer coincidence. In essence, this case is no different from any other where equalization is an issue.

■ The Town argues that there is no jurisdiction because taxpayers sought to compare their properties to properties that are not comparable, as that term is used in § 4467. As we decide in the main body of this opinion, taxpayers' use of the concept of comparable properties is fully consistent with our precedents in the context of the record before the Board. More to the point, we do not believe that

every dispute over what is a comparable property must be resolved initially as a dispute over jurisdiction. Taxpayers are entitled to argue for a view of comparability as favorable as they can reasonably achieve without having their appeal summarily dismissed because they crossed over an unseen jurisdictional line. *Alexander* does not prevent these appeals.

## III. Appraisal of Personal Property

Taxpayers raised two separate, but related, claims of discrimination: (1) the Town improperly distinguished between real and personal property in its appraisal methodology, requiring owners of the latter to bear a disproportionate share of the tax burden; and (2) the failure of the Town to reappraise for twenty-five years has resulted in discrimination against owners of commercial and industrial properties because these properties have appreciated in value less than other properties over that time. We find it helpful to treat these arguments separately and first focus on the appraisal of personal property.

Unlike real property, the Town assesses personal property at current fair market value, as determined from values reported by taxpayers. Because of the broad exemptions the Legislature has created, see 32 V.S.A. § 3802, business personal property and inventory represent all of the personal property subject to local property taxation. Business personal property includes tangible personal property of a depreciable nature used in a trade or business. See *id.* § 3618(c)(1). Inventory is tangible personal property of a nondepreciable nature held for consumption, sale or lease. See *id.* § 3848(b). Both business personal property and inventory may be exempted by majority vote in the municipality. See *id.* §§ 3848(a), 3849(a).

Unless exempted by the town, business personal property is normally appraised at fair market value. See *id.* § 3618(a). However, the law offers two alternative methods of valuing business property. See *id.* The town must vote to offer the alternatives, but the taxpayer chooses between them. See *id.* The ratio between listed and fair market value must "be the same for both real and personal property." *Id.* § 3481.

The Town argues that it properly distinguished between real and personal property in its listing scheme. We have, however, held that § 3481 prevents use of different equalization ratios for real and personal property, see *Town of Barnet v. Palazzi Corp.*, 135 Vt. 298,

302, 376 A.2d 24, 27 (1977), except in the limited case where the town votes to offer alternative methods of valuing business personal property, see *Grand Union Co. v. City of Winooski*, 152 Vt. 193, 195, 566 A.2d 398, 399 (1988). In reaching this decision, we reasoned:

> The fact that the appellee's property is listed in accord with the statutory fifty per cent ratio[4] is immaterial given the undeniable discrimination that exists in this case. The constitutional requirement of uniformity takes precedence over a legislative directive to list at a fixed percentage of fair market value. The fact that a given property is appraised and listed at the appropriate statutory rate does not foreclose the fact that the rate may be discriminatory.

*Palazzi*, 135 Vt. at 302, 376 A.2d at 27 (footnote added). Put another way, *Palazzi* necessarily holds that a town that values business personal property at fair market value may not have one equalization ratio for real property and another (or none) for personal property. Real and personal property must be considered comparable for purposes of the property valuation appeals statute, 32 V.S.A. § 4467.

In its argument, the Town highlights the difficulty, if not impossibility, of properly valuing personal property, and the likelihood that the self-reporting system understates the value of the property. We understand the Town to be suggesting that its system, with all its imperfections, should be considered close enough. This argument should be made to the Legislature. The current statutory scheme clearly imposes on the listers the obligation to determine the fair market value of all property, real and personal, and to "make such personal examination of the property which they are required to appraise as will enable them to appraise it at its fair market value." *Id.* § 4041.

The fact that personal property is difficult to appraise fully and fairly is notorious, both nationally, see, e.g., R. Statham & C. Lehmann, U.S. Chamber of Commerce, A Review of the Property Tax and Its Impact on Business 40 (1973), and in Vermont, see Vermont Dep't of Taxes, Vermont Comprehensive State Planning Project: A Preliminary Report on Property Tax Assessments in Vermont 18 (1964) (assessment of business personal property presents "an ex-

---

[4] At the time of the listing in *Palazzi*, property was listed at 50% of fair market value. In 1977, the governing statute was amended to require listing at "100 percent of the appraisal value." 32 V.S.A. § 3481(2), as amended by 1977, No. 105, § 6.

tremely dismal picture. Much of this property escapes taxation altogether and a good portion of the balance is listed at ridiculously low figures."); Report of the Tax Study Committee to the Vermont Legislative Council, Tax Policy for Vermont 1967, Part IV, at 9 (1967) (business personal property tax is "erratically assessed, and results in substantial inequities in and among the towns"). Despite the notoriety, the Legislature has not modified the listers' obligation to value such property. If that obligation is impractical, it is up to the Legislature to enact a more workable scheme. The Town, of course, has the option to eliminate the difficulty by exempting personal property from taxation or, at least for business personal property, by opting for a valuation method not based on fair market value.

Nor are we persuaded that we should somehow weigh the inaccuracies of a self-reporting system. As set out above, the statute clearly places the burden of a "personal examination" on the listers, a requirement inconsistent with total reliance on self-reported values. Moreover, taxpayers must submit inventories of personal property "under the pains and penalties of perjury." 32 V.S.A. § 4002. The Town is asking that taxpayers who take their duty of accurate reporting seriously to subsidize those that do not. It is one thing to recognize that every taxpayer must pay this subsidy in some amount; it is another thing to compound the unfairness by specially penalizing law-abiding, personal-property taxpayers as if they are somehow responsible for the misfeasance of other personal-property owners.

We see no reason to revisit the holding of *Palazzi*. It is clearly consistent with the statutory language and its legislative history.[5] Other courts have reached similar conclusions in similar circumstances. See *In re General Motors Corp.*, 137 N.W.2d 161, 164 (Mich.

---

[5]The definition section was first added in 1957. The act defined "Listed value" as "a proportionate part of the appraised value agreed upon by the board of listers, and such ratios for real and personal property shall be recorded with the town clerk." 1957, No. 237, § 1. The language allowed for different ratios for real and personal property, exactly the authority the Town seeks here. However, the authority for separate ratios was removed in 1959, in an act titled, in part, "Relating to the Listing of Real and Personal Property at the Same Ratio of Market Value." The language of the 1959 statute provided: "Each town may determine the ratio of listed value to appraisal value to be used in the town, but the ratio shall be the same for both real and personal property." 1959, No. 175, § 1. Thereafter, the Legislature removed the authority of the board of listers to establish listing ratios and set the ratio at 50%, 1965, No. 126, § 1, and then at 100%, 1977, No. 105, § 6.

The history shows that the Legislature was as concerned about equity between real and personal property as about the listing ratio. This history supports the holding in *Palazzi* that 32 V.S.A. § 3481 requires that personal property be listed at the same ratio to fair market value as real property.

1965); *Grainger Bros. Co. v. County Bd. of Equalization*, 144 N.W.2d 161, 168-70 (Neb. 1966). *Palazzi* governs this case because the Town values all its personal property at fair market value.

The Board was clearly correct in requiring use of a common equalization ratio for real and personal property. The Town has no power to adopt an appraisal methodology that discriminates between these types of property.

## IV. Appraisal of Real Property

The Board also required a common equalization ratio for all categories of real property. The Town challenges this conclusion, arguing that the Board must adopt equalization ratios specific to the type of property involved. Specifically, the Town argues that 32 V.S.A. § 4467 limits the Board to using only "comparable properties within the town" in determining the proper equalization ratio and that only properties within the same class as the taxpayer's property can be considered comparable.

The Board did not accept this argument because it found that, within each class, the size of the samples upon which the Town based its proposed equalization ratios was too small. Thus, it went to the ratio that was based on the largest number of appraisals of other properties within the town, the ratio developed by the Commissioner of Taxes in connection with determining the aggregate fair market value of property within the town. See 16 V.S.A. § 3458a(a). It concluded that the tax commissioner's ratio "is clearly the best evidence of record . . . [of] the average equalization ratio for the Town."

Consistent with the Board's rationale, we have become concerned in recent years about the size of any sample of properties used for comparison to derive equalization ratios. See *Bowen v. Town of Burke*, 153 Vt. 131, 136, 569 A.2d 452, 454 (1989) (Dooley, J., concurring). In *Philbin v. Town of St. George*, 156 Vt. 640, 641, 588 A.2d 1060, 1061 (1991) (mem.), we reversed a Board's determination of listed value because, in arriving at an appropriate equalization ratio, it unduly narrowed the class of comparable properties. We held that the taxpayer or the town could rely on any relevant evidence to determine an equalization ratio. Although the Board is normally limited to comparing to properties in the same class as that of the taxpayer's property, "where the Board concludes that it lacks evidence of a statistically representative sample," it may use evidence of other classes. *Id.*

The holding of *Philbin* was amplified in *Vermont Electric Power Co. v. Town of Cavendish*, 158 Vt. 369, 373-74, 611 A.2d 389, 391-92 (1992), where the Board used the tax department's average equalization ratio for all property in the town, the approach used in this case, to value utility property that was comparable to only one other utility. We affirmed that "[i]n the absence of evidence of sufficient comparables," the Board could use the town's average equalization ratio, noting that "[b]ecause property taxation rests on notions of equity and fairness, there is no better evidence than the average equalization ratio for all property within the Town." *Id.*; see also *In re Milot*, 151 Vt. 615, 617, 563 A.2d 1005, 1007 (1989) (where taxpayer fails to present sufficient evidence of fair market value of comparable properties, "city-wide ratio . . . should be applied as if the property were unique").

We do not intend to suggest that the Board can, without adequate justification, throw out the proffered comparables and use the tax department's average ratio in every case. We believe, however, that this is exactly the type of case where that action is most appropriate.

As we emphasized in the facts, the Town has not reappraised in over twenty-five years and is intentionally valuing property as if the tax year were 1967. Back-dating assessments may be a way of creating rough equity between listings when practiced for a relatively short period of time, but it is ineffective over any extended period:

> Over the years, the grand list becomes inequitable as well as out of date. If all property values changed at a uniform rate, the grand list might still be a valid means of determining everyone's just proportion, and thereby assessing taxes. However, different types of property tend to appreciate/ depreciate much more rapidly than others. For example, in recent years lakeshore property has been appreciating much more rapidly than large tracts of forest land.

Vermont Dep't of Taxes, Division of Property Valuation and Review, Vermont Lister's Handbook 8 (1995).

The extent to which a grand list achieves equity among taxpayers is commonly measured by the "coefficient of dispersion," which is often expressed as a percentage. The coefficient of dispersion, also known as the index of error, measures "the extent of deviation of individual assessment ratios from the . . . general average ratio for the area." Vermont Dep't of Taxes, A Preliminary Report on Property Tax Assessments in Vermont 6 (1964); see also 16 V.S.A. § 3441(21) (longer, precise definition of coefficient). A low coefficient means that

the equalization ratio for any given property is likely to be close to the average equalization ratio for the town involved. In numerical terms, a coefficient of 20% or less "marks acceptable and attainable assessing standards" and a coefficient "as high as 30% indicates such inequitable assessments as to call for drastic reform in administration." Vermont Dep't of Taxes, A Preliminary Report on Property Tax Assessments in Vermont 6-7 (1964).[6]

In 1993, the coefficient of dispersion for Rutland Town, as determined by the Vermont Commissioner of Taxes pursuant to 16 V.S.A. § 3458a(a), was 30.69%.[7] See Vermont Dep't of Taxes, Division of Property Valuation and Review, Annual Report 29 (1994). This level of inequity makes unreliable any equalization ratio derived from a small number of appraisals or sales. The chance that the equalization ratios fall near the average is low. Deriving average equalization ratios in such a fashion is "as rational as rolling dice." *Bowen*, 153 Vt. at 132, 569 A.2d at 452 (Dooley, J., concurring). The Board acted well within its discretion in rejecting the equalization proposal of the Town and using instead an average ratio derived from state valuation data. It also acted within its discretion in not using tax department ratios for separate classes of property because, as the Town notes, these too are based on small sample sizes.

This situation has arisen in other states that have adopted a method of equalization similar to that employed here by the Board. The leading case is *In re Kents 2124 Atlantic Ave., Inc.*, 166 A.2d 763 (N.J. 1961), which has facts virtually identical to those before us. The court explained the rationale for rejecting comparisons to comparable properties:

> If property in general is assessed at a uniform ratio, it may be a satisfactory expedient to assess an individual parcel on the basis of the treatment of comparable properties, but when there is no semblance of general uniformity, the

---

[6] A more recent report defines "a generally accepted standard of accurate listing" as a coefficient of 15% or less and a coefficient of 30% or more as "a totally unacceptable level of equity among property taxpayers." G. Carlson & R. Finnegan, Assessment Administration in Vermont 24, 25-26 (1976).

The Vermont state aid to education law imposes reductions in state aid on any town with an average equalization ratio below 80%. See 16 V.S.A. § 3475(a). This penalty is waived if at any point within the preceding five years the average equalization ratio was 95% and its coefficient of dispersion was less than 20%. *Id.* § 3475(c)(1).

[7] Taxpayers' expert witness did his own independent study and concluded that the Town's coefficient of dispersion in 1993 was 39%.

comparable properties are but arbitrary standards, and assessments made by reference to them merely compound the existing inequality.

*Id.* at 767. It also acknowledged the limited significance of an average equalization ratio where, as here, there is a high coefficient of dispersion with "widely varying assessment ratios within each of the . . . classes of property." *Id.* at 766. Nevertheless, it adopted use of an average equalization ratio as the only realistic remedy for most cases:

> Where, as here, the record of sales indicates there is no common level for all or any class of real property and the assessors disavow any effort to achieve one, the average ratio should be deemed sufficient evidence of the level to which reduction should be granted in the absence of circumstances indicating that the average should be modified for that purpose. . . .
>
> . . . .
>
> We have reached this result after carefully considering attacks upon the appropriateness of the average ratio. It is argued a reduction to the average ratio will increase the burden upon other properties assessed above it, and indeed if sufficient reductions should be granted the average itself will be progressively driven down. Abstractly, all of that is so, unless someone concurrently raises assessments which are below the ratio. But the criticism goes not to the justice of granting relief but rather to the amount of it. Mathematical perfection in taxation is unobtainable, and hence relief should not be denied merely because the result lacks absolute precision. The injured taxpayer is entitled to practical relief.
>
> Moreover the remedy we find appropriate has an added virtue, for if a flood of appeals should ensue or be feared, it may well quicken the official conscience and induce the district to revalue and to keep the rolls current.

*Id.* at 768-69. Numerous courts have followed the rationale and result of *Kents*. See *Lerner Shops v. Town of Waterbury*, 193 A.2d 472, 477 (Conn. 1963);[8] *In re Objection to Real Property Taxes*, 353 N.W.2d

---

[8]The facts of *Lerner Shops* are similar to those here; the assessors back-dated assessments to values prevailing fifteen years earlier. In *Uniroyal, Inc. v. Board of Tax*

525, 533 (Minn. 1984); *Savage v. State Tax Comm'n*, 722 S.W.2d 72, 79 (Mo. 1986) (en banc); *Deitch Co. v. Board of Property Assessment, Appeals & Review*, 209 A.2d 397, 401-02 (Pa. 1965); *Baken Park, Inc. v. County of Pennington*, 109 N.W.2d 898, 901-02 (S.D. 1961). We join those courts.

The Town's main objection to the use of the average equalization ratio for all properties is that it allows comparisons across property classifications. The tax department compilations show average equalization ratios for commercial and industrial property, and these are much higher than for residential properties and thus are higher than the ratio for all properties. The Town argues that only these ratios can be used because only other commercial properties can be considered comparable with a commercial property, and only industrial properties can be considered comparable to an industrial property. In essence, the Town argues that 32 V.S.A. § 4467, by limiting equalization comparisons to comparables, creates the right for a town to classify property and implement differential assessments.

Our holdings in *Philbin* and *Vermont Electric Power Co.* necessarily reject this argument, but only by implication. To provide guidance to the Board, we should be more explicit in stating our rationale.

■ We have upheld the constitutional power of a municipality to classify property and assess different classifications differently. See *In re Property of One Church Street*, 152 Vt. 260, 264-65, 565 A.2d 1349, 1351 (1989). However, in *One Church Street*, the city had specific legislative authority to classify property for tax purposes. A municipality possesses only those powers or rights expressly granted to it by the Legislature, those fairly implied in or incident to the powers expressly granted, and powers that are essential to the declared objects and purposes of the municipality. See *Conn v. Middlebury Union High Sch. Dist. #3*, 162 Vt. 498, 500-01, 648 A.2d 1385, 1387 (1994); *Bryant v. Town of Essex*, 152 Vt. 29, 36-37, 564 A.2d 1052, 1056 (1989). A municipality's power to classify property must be derived from one of these sources.

■ We can find no express legislative authorization for a general power to classify property for purposes of property taxation. Indeed, the statutes state clearly that a town must assess all property at fair market value, see 32 V.S.A. § 3481, and tax all property uniformly,

_____
*Review*, 438 A.2d 782, 785 (Conn. 1981), the court held that the remedy of imposing the average equalization ratio was appropriate only where the assessors deliberately ignored the statutory command to assess at fair market value.

see *id.* § 4601. Although there are limited exceptions to this policy, see, e.g., *id.* § 3618(a), they do not remotely create a general power to classify property and impose differential rates. Nor can we construe the appeal statute, *id.* § 4467, as creating such a power. The statute does not so state, and such a construction would place it in conflict with more explicit statutes. Moreover, this construction would undermine the primary purpose of the statute, to enforce uniformity. *New England Power Co. v. Town of Barnet*, 134 Vt. 498, 509, 367 A.2d 1363, 1370 (1976).

Nor can we find that the general power to classify is incidental, subordinate or necessary to an express power or essential to a town's object and purposes. On this point, we distinguish *Alexander*, the main case relied upon by the Town. In *Alexander*, we upheld the power of a town to adopt a rolling reappraisal system whereby it annually reappraised those properties that were in a class that had the lowest overall equalization ratio. 152 Vt. at 157-58, 565 A.2d at 1299. Recognizing that complete annual reappraisals were impossible, we found the system to be reasonable to keep "appraisals as current as possible within the resources available by attacking the worst underassessment problem areas." *Id. Alexander* is an example of temporary classification, and differential assessment, that can be said to be incidental and necessary to the general power to assess properties and use the property tax for raising the necessary revenues for municipal purposes. It does not support a general power to classify property and abandon uniformity, or to accomplish the same end by ignoring the obligation to tax at fair market value for an extended period of time.

Even if we held that towns have the general power to classify property and assess the classes differently, we do not believe this power helps the Town in this case. The Town has never sought to classify its property for assessment purposes, except between real and personal property. Instead, it is relying on categories developed by the Division of Property Valuation and Review of the Vermont Department of Taxes in order to analyze and report on property values and assessments in each town and the fact that many years of appraisal inaction has had an unequal impact on the accuracy of appraisals of various types of property.

Ultimately, the Town's purpose is to differentiate between properties based on the unequal impact of the failure to appraise. Thus, if dark-colored homes inflated in value more than light-colored homes, the fact of the value differential would create a de facto classification

that prevented their comparison. This position would turn the mandate of § 4467 on its head, making the statute unavailable precisely when it is needed. We cannot accept that inaction can be turned into a policy that prevents equalization of assessments.

With these points in mind, we do not believe the Legislature used the term "comparable" in describing the Board's equalization power in the same sense that it used the term for determining fair market value, see *Philbin*, 156 Vt. at 640-41, 588 A.2d at 1060, or in a narrow sense that restricts the ability of the Board to implement the uniformity required by our constitution and statutes. In the normal case, the Board should look to the fair market and listed values of similar properties within the same class. Where, as here, it must look at a broad cross-section of properties to achieve uniformity, it is not limited to properties that are similar or even to those in the same class. On this record, we affirm its use of an equalization ratio that includes properties of various types.

■ Having addressed the Town's main point, we now turn to its other points. First, it argues that the Board erred in admitting evidence of values of properties in classes different from those of the properties under consideration. The Board had the discretion to use any relevant evidence to find a proper equalization ratio. For the reasons stated above, the evidence was relevant.

■ Second, the Town argues that the taxpayers failed to overcome the presumption of validity that attaches to the listers' valuation, and the Board of Civil Authority determinations for each taxpayer should have been affirmed on that basis. The presumption of validity is neither evidence nor an evaluation of the quality or credibility of evidence. The standard by which the trier must weigh the facts sought to be used to overcome the presumption is not one of credibility, but rather one of admissibility: "'Does the fact offered in proof afford a basis for a rational inference of the fact to be proved?'" *Rutland Country Club, Inc. v. City of Rutland*, 140 Vt. 142, 146, 436 A.2d 730, 732 (1981) (quoting *Tyrrell v. Prudential Ins. Co. of America*, 109 Vt. 6, 21, 192 A. 184, 191 (1937)). In the proceedings before the Board, taxpayers introduced abundant admissible evidence to rebut the presumption. The fact that the Board did not choose to accept some of taxpayers' evidence does not determine whether the presumption was overcome.

■ Third, the Town contests the admissibility of the PV&R report on which the Board relied, asserting it is inadmissible hearsay. Even

if this were a court proceeding, we would reject the hearsay challenge because the report is a record, report or data compilation of a public agency setting forth its factual findings pursuant to authority granted by law, see 16 V.S.A. § 3458a (annual aggregate fair market value report); 32 V.S.A. §§ 3402, 3411, 3412 (power of Director of PV&R to collect data on work of listers in each town and assist municipalities in administration of property tax, duty to report annually to Legislature on appraisal practices and methods employed around state), and is therefore within an exception to the hearsay rule. See V.R.E. 803(8). In any event, we believe the Board may, on proper notice, take judicial notice of the annual PV&R equalization report. See 3 V.S.A. § 810(4). The Town had proper notice of its use.

## V. Remedy

The Board found that the average equalization ratio for all property in the Town was 27.63% and assessed the properties of each of the taxpayers at that percentage of fair market value. The Town argues that the calculation is erroneous, and the equalization ratio should be higher. The taxpayers have cross-appealed the Board's decision and argue that we should recalculate the assessments using the equalization ratio advocated by their expert witness.

The most important point of disagreement between the parties is the handling of the past listing of personal property in determining an equalization ratio. The Board derived its equalization ratio from the PV&R study of the fair market and listed value of all property, real and personal, within the Town. Taxpayers argue that the equalization ratio should be based solely on the listed values of real property, excluding the values of personal property because of the discrimination against this property.

There are arguments for both the Board's and the taxpayers' approaches, and we stress that any equalization ratio based on past listing practices will necessarily be imperfect and temporary, especially where there is a high coefficient of dispersion. Only a complete appraisal will bring about the degree of equity the law requires. We conclude, nevertheless, that the better approach is to omit the personal property values from the calculation. Thus, we reverse and remand the Board's equalization ratio for recalculation considering only the values of real property in the Town.

As we stressed in our analysis, there are two distinct discrimination problems caused by the Town's appraisal methodology. Thus, in the

unique circumstances of these cases, the equalization ratio is being used to solve two different problems: (1) the inequities caused by twenty-five years without a complete reappraisal; (2) the discrimination against personal property in the assessments. We solve the latter problem by equalizing ratios for real and personal property. If we choose an average between them, we may not create an effective remedy for the former problem. Overall, we may not create a sufficient inducement "to revalue and to keep the rolls current." *Kents*, 166 A.2d at 769.

The second point of contention is in the data and analyses on which the Board's equalization ratio is based. The Board adopted the PV&R analysis and conclusions after rejecting the report of taxpayers' expert, finding much of its underlying data to be unreliable. Taxpayers argue in this Court that the reasons for rejecting their expert's report were erroneous. We have considered the taxpayers' arguments, but conclude the matter lies within the Board's discretion in evaluating the evidence before it. See *Sondergeld v. Town of Hubbardton*, 150 Vt. 565, 571, 556 A.2d 64, 68 (1988).

 Finally, the Town argues that the Board erred in relying on a preliminary PV&R equalization ratio and refusing to reopen to consider the final ratio determined by PV&R. In view of the required remand, we need not consider whether the Board erred. Assuming it will continue to rely on the PV&R conclusions, the Board should use the final ratio, subject, of course, to taxpayers' right to try to persuade it that the final ratio is not more accurate.

## VI. Conclusion

 As a central theme of its appeal, the Town has argued that it followed clear precedents of this Court, it should not be penalized for doing so, and any change in the law should be prospective and not afford any relief to the taxpayers in these cases. In affirming most of the analyses and conclusions of the Board, we agree with them that the reality is markedly different from that which the Town portrays. The Town could not be unaware of the great inequities that have resulted from twenty-five years of inattention to the clear legal mandate to appraise and list properties at *current* fair market value. Nor can it claim that enforcement of a clear precedent of this Court to treat real and personal property alike is a change in the law. We would do a grave injustice to these taxpayers to deny them fair appraisals and tax bills any longer.

*The decisions of the Vermont Board of Appraisers combined under the name Knollwood Building Condominiums v. Town of Rutland are affirmed in part, and reversed in part, and remanded for proceedings not inconsistent with this opinion.*