*Nancy E. Fields Revocable Trust v. Rubinstein*, No. 607-10-16 Wncv (Tomasi, J., July 14, 2020).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 607-10-16 Wncv |

| | |
|---|---|
| Nancy E. Fields Revocable Trust,<br>  Plaintiff,<br><br>  v.<br><br>Kenneth Rubinstein and<br>Five Ways Farm, LLC,<br>  Defendants. | |

### Opinion and Order on Cross-Motions for Summary Judgment, MPRs #3 and #22

In this case, Plaintiff Nancy E. Fields, Trustee of the Nancy E. Fields Revocable Trust (Ms. Fields) claims that Defendants Kenneth Rubinstein and Five Ways Farm, LLC, (collectively, Mr. Rubinstein) have obstructed Ms. Fields' use of a right of way (ROW) crossing property of Mr. Rubinstein. The contested ROW extends from a parcel (frontage lot) that does not abut but has uncontested public highway access to a separate "mountain lot" parcel, both owned by Ms. Fields. The Rubinstein parcel that the ROW crosses sits between and is contiguous with both Fields parcels.

### I.     Procedural Posture

In earlier proceedings in this case, Mr. Rubinstein simultaneously filed three separate motions for summary judgment. The Court (Teachout, J.) granted one to the effect that the only plaintiff who is a real party in interest is Ms. Fields in her

capacity as Trustee for the Plaintiff Trust. The Court denied the second addressing

"prescriptive termination." And the Court denied the third in which Mr. Rubinstein

argued that there is no effective "deed basis" for any ROW providing access to Ms.

Fields' mountain lot. *See generally* Summary Judgment Decision (filed August 28,

2019).

With regard to Mr. Rubinstein's "deed basis" argument, the Court ruled as

follows:

> Defendants [Rubinstein] claim Plaintiff Trust [Fields] has no
> easement because no easement was ever originally created by either
> grant or reservation in a deed. However, land records show that the
> easement right has been granted to all holders in Plaintiff Trust's
> chain of title since 1965 and was excepted from what Defendants
> acquired in their original acquisitions in 1997 and 1998 and was
> previously an exception in their chain of title. A survey of it was
> recorded in 1965. The land contract recorded in the land records in
> 1961, with Goves as parties, demonstrates that a physical roadway
> existed on the land as of that time and there is no dispute as to its
> original location and that it led from the Trust's frontage lot to the
> mountain lot. The Goves conveyed the intervening land in 1963,
> reserving and excepting the easement.
>
> There may well be legal bases to support the Trust's current
> ownership of the easement right. The court is not satisfied that all
> facts pertinent to possible claims (such as adverse possession with or
> without color of title, acquiescence, estoppel, marketable record title)
> have been presented such that the issue may be decided on
> Defendants' motion for summary judgment. The court cannot conclude
> that there is no basis for Plaintiff Trust's claim of an easement right to
> the mountain lot. The Defendants' Motion for Summary Judgment on
> the basis of deeds is denied. Plaintiff Trust is not foreclosed from the
> opportunity to prove its claims.

*Id*. at 5 (footnote omitted). The Court denied Mr. Rubinstein's efforts at

reconsideration, denied Ms. Fields' later filed summary judgment motion as

untimely, and attempted to steer the case towards trial.

2

Following a rotation of judges and difficulties scheduling a bench trial convenient to the Court and the parties, the parties presented the Court with a stipulation contemplating that the Court would reconsider those cross-motions for summary judgment disposed of by Judge Teachout that addressed what Mr. Rubinstein characterizes as the "deed basis" for the existence of the easement claimed by Ms. Fields.[1] At a status conference, both sides expressed their view that the summary judgment record before Judge Teachout was fully sufficient to support summary judgment, with, of course, each side believing that judgment should be entered in its favor.

The issue of the lawful existence of a deeded ROW is central to the case and awarding judgment on that issue pretrial would dramatically simplify (or potentially eliminate the need for) a trial. At the parties' urging, and with additional briefing anticipated, the Court agreed to take a fresh look at their motions. *See* Scheduling Stipulation (filed Feb. 13, 2020). Having now done so, the Court makes the following determinations.

II.     Mr. Rubinstein's "Deed Basis" Theory/the "Deed Issue"

Mr. Rubinstein asserts that, upon close reading, the relevant deeds do not support the existence of Ms. Fields' claimed ROW. Specifically, his argument

---

[1] While Ms. Fields' motion also raises the way of necessity issue, that matter appears to  be outside the scope of the parties' stipulation, and Ms. Fields admits that the "deed theory" is the "sole" issue upon which she is seeking summary judgment. In any event, to the extent discussed below, the Court is satisfied that there are material disputes of facts concerning that issue that would preclude entry of summary judgment on that basis.

proceeds essentially as follows.[2] (1) By no later than 1961, the Robinsons had come to own all contiguous parcels relevant to this case that now are owned by Ms. Fields and Mr. Rubinstein.[3] (2) If any deeded ROW from the frontage lot to the mountain lot pre-existed the Robinsons' common ownership of these contiguous parcels, common ownership terminated it. (3) On October 25, 1961, the Robinsons conveyed property to the Ricketts that would have been burdened by the ROW if it still existed but the Robinsons did not retain any right of access to the mountain lot. The very next day, this property was conveyed to the Goves and eventually came to be owned by Mr. Rubinstein.[4]

(4) On November 1, 1963, the Robinsons conveyed the frontage and mountain lots to the Ricketts, purporting to also convey a ROW between them. This property eventually came to be owned by Ms. Fields. (5) Because the historical ROW, if it ever existed, was terminated by the Robinsons' common ownership of all relevant parcels, and the Robinsons then conveyed away the property that would have been

---

[2] Mr. Rubinstein's numerous additional arguments largely follow from his "core" argument, as described here, and quickly descend into disputes of fact and rely on factual inferences inappropriate for summary judgment.

[3] Mr. Rubinstein asserts this fact of common ownership, and his expert adopts it, but in a somewhat conclusory fashion. Ms. Fields agrees with that fact. The Court thus accepts it as undisputed for purposes of this decision. The Court is not able, however, to track the language of the deeds in the record and independently arrive at the same conclusion. That could be because the record is missing evidence that would fill in some gaps or because certain deed language requires further explanation to be better understood.

[4] A signed contract made in connection with the conveyances, however, indicates an intention to maintain the ROW through a process of conveyance and retention.

burdened by a ROW to Mr. Rubinstein's predecessors in title without retaining any right to a ROW, the Robinsons had no ownership of any ROW to later convey to Ms. Fields' predecessors in title. Subsequent deed references to the ROW in either chain of title cannot resurrect it, according to this theory. References in Ms. Fields' chain of title all are flawed due to the Robinsons' failed attempt at conveying something they no longer owned—one cannot convey what one does not own. References in Mr. Rubinstein's chain of title directly conflict with the so called "stranger-to-the-deed rule."[5] On those bases, concludes Mr. Rubinstein, if one looks *only* to the deeds, there is no effective ROW connecting Ms. Fields' frontage lot and mountain lot across Mr. Rubinstein's lot.

Mr. Rubinstein's argument finds strong initial support in the merger doctrine:

> Under the common-law merger doctrine, an easement ceases to exist when the dominant and servient estates come into common ownership. "When the burdens and benefits [of an easement] are united in a single person . . . the servitude ceases to serve any function. Because no one else has an interest in enforcing the servitude, the servitude terminates." Merger occurs by operation of law.

*Fletcher v. Ferry*, 2007 VT 8, ¶ 5, 181 Vt. 294, 296–97 (citations omitted). This is so regardless whether the common owner intended merger or not. *Id.*, 2007 VT 8, ¶ 7, 181 Vt. at 297–98.

---

[5] Mr. Rubinstein allows that a subsequent conveyance recreated one segment of a ROW, but he argues that the segment, viewed in isolation, cannot serve any legitimate purpose and therefore terminates as a matter of law.

Ms. Fields concedes common ownership of the relevant parcels in the Robinsons. *See supra* n.2. She then, however, largely disregards as mere oversight the Robinsons' failure, having allowed the ROW to terminate, to re-establish it at the time of their subsequent conveyance of the would-be servient parcel to the Ricketts. "Oversight" is not a legal theory.[6] As *Fletcher* demonstrates, even if the Robinsons intended common ownership to *not* terminate the ROW, it would have done so anyway. Ms. Fields has not come forward with any viable way in which common ownership would not have terminated the ROW.

Nor is the parties' "intent" sufficient to rewrite the plain language of the deeds. Ms. Fields argues that there is "no doubt" that there is ambiguity in the 1961 recorded contract and the deed from the Robinsons to the Ricketts that fails to reserve the ROW. She argues that the extrinsic evidence is clear, however, as to what the parties *really* intended: the reservation of the ROW so that it would properly pass along Ms. Fields' deed chain.

The record certainly includes ample extrinsic evidence of the parties' intent that is *not* consistent with the failure to reserve a ROW to the mountain parcel in the relevant conveyance to the Ricketts. Any "mistake," however, in failing to

---

[6] "Reformation," on the other hand, provides a remedy where, through mistake, inadvertence, or neglect, the words of a deed do not represent the actual conveyance as intended by the parties. *LaRock v. Hill*, 131 Vt. 528, 530–31 (1973). A party seeking reformation must make an exacting showing, however. She must prove beyond a reasonable doubt that there was a valid pre-existing agreement that represents "a standard to which the erroneous writing could be reformed so as to express the true transaction between the original parties to the deed." *Kilcullen v. Dery*, 133 Vt. 140, 142, (1975). Ms. Fields has not sought reformation in the current motions.

expressly reserve or convey such an easement is not properly framed as an "ambiguity" in the language of the relevant deed. An ambiguity in a deed must be located in the "particular language" of the deed. *Kipp v. Chips Estate*, 169 Vt. 102, 107 (1999); *see also Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 579 (1988) ("Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable."). In this instance, there is no issue of interpretation as to the language of the deed. The deed contains no confusing wording that extrinsic evidence demonstrates is legally ambiguous. It simply omits—unambiguously—any reservation of the ROW altogether.

Mr. Rubinstein's deed basis argument finds further support in the stranger-to-the-deed rule. Following merger and absent express creation of a new ROW, subsequent deed references to the ROW in the Rubinstein chain of title are, *at most*, exceptions in respect of rights in third parties who are strangers to the conveyances memorialized in the deeds. Vermont continues to adhere to the stranger-to-the-deed rule: "The prevailing rule is that the grantee of a deed that contains an exception in favor of a stranger is not estopped to deny the efficacy of the exception. *Such an exception is effective only to confirm a pre-existing right and will not itself vest any title or interest in the third person.*" *Tallarico v. Brett*, 137 Vt. 52, 59 (1979) (citation omitted, emphasis added); *see also Guilbault v. Bowley*, 146 Vt. 39, 41 (1985) ("The reference to the defendants' water line contained in the plaintiffs' deed did not create any interest not previously existing in the defendants nor does it

7

estop the plaintiffs from challenging the defendants' interest, since the defendants were not parties to that deed. Thus, it must be determined whether the defendants acquired an enforceable interest in the water line by some other means." (citation omitted)).

The above rule has been criticized, and it has been abandoned in the most recent Restatement. It is still the law of Vermont, however, and remains the majority rule. *See* Jon W. Bruce and James W. Ely, Jr., *The Law of Easements & Licenses in Land* § 3:9; Restatement (Third) of Property (Servitudes) § 2.6(2).

Accordingly, Mr. Rubinstein is entitled to summary judgment on this issue. The common ownership of the parcels eliminated the "deed basis" for the ROW.

III. <u>Other Bases for the Claimed ROW</u>

Mr. Rubinstein would have the Court enter judgment in his favor on Ms. Fields' claims based solely on the above legal conclusion. He maintains that Plaintiff should be barred from raising any additional or equitable theories in support of the claimed ROW. The present record before the Court does not support that determination.

The pleadings do not limit Ms. Fields' bases for relief. The Amended Complaint (filed Nov. 3, 2016) asserts that Ms. Fields accesses the otherwise landlocked mountain parcel over a ROW referred to and described (however vaguely) in numerous deeds, as well as a recorded contract, in both Ms. Fields' and Mr. Rubinstein's chains of title that crosses contiguous Rubinstein property. The Amended Complaint goes on to assert numerous claims based on Mr. Rubinstein's

8

alleged interference with Ms. Fields' claimed ROW.  Other than reciting some of the relevant deed histories, the recorded contract, general circumstances, and that the mountain parcel otherwise would have no public highway access, the Amended Complaint does not include any exploration of the possible legal theories that might support the existence of Ms. Fields' claimed ROW.

The only count in the complaint directly addressing the *existence* of the ROW (as opposed to interference with the ROW) says only this:

> Plaintiffs seek a declaratory judgment from this Court that Plaintiffs, their heirs, and assigns, are the lawful owners of, and have full right and authority to use and occupy in perpetuity, the Fields Right of Way for access to and from Fields 2 [the mountain lot], subject only to the restrictions and limitations imposed on a portion of the Fields Right of Way in the deed to Plaintiffs from Peter and Dorothy Damone dated March 5, 1997, and recorded in Book 116 Page 359 of the Warren land records.

Amended Complaint ¶ 62 (filed Nov. 3, 2016).

"[P]leading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief'; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (citations omitted); *see also* 5 Arthur R. Miller *et al., Fed. Prac. & Proc. Civ.* § 1250 (3d ed.) ("If the plaintiff's . . . claim is based upon the ownership of property, it usually is sufficient simply to allege the plaintiff's ownership in the complaint without showing how title was acquired."); *see also First Nat. Bank of Boston v. Silberdick*, 146 Vt. 209, 211–12 (1985) (the modern procedural rules "are designed to avoid the

9

old 'sporting theory of justice' and to facilitate decisions on the merits" (citation omitted)).

The Amended Complaint is not reasonably read to describe the specific legal theory supporting the claimed ROW, to include all legal theories on which Ms. Fields may be relying, or to exclude any legal theory in particular. *See* Vt. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). Rather, Ms. Fields clearly asserts ownership of the ROW and leaves precisely how she came to have ownership unclear, again, other than citing certain recorded references to the ROW and the general circumstances of the properties and conveyances.

In support of his narrow view of the case, Mr. Rubinstein describes the "issue" in controversy as follows: "Plaintiff and defendant own abutting land in Warren. Six of plaintiff's seven claims against defendant are based on plaintiff's assertion that it has a *deeded* right to travel defendant's land. Plaintiff advances no alternative theories, and it is far too late to add [new] ones now. So, the question at the heart of this motion is simple: *Do deeds substantiate plaintiff's claimed right-of-way?*" Mr. Rubinstein's Motion for Summary Judgment 2 (filed May 3, 2018, footnotes omitted). In a footnote, he adds, "The parties have completed depositions and other significant discovery and are scheduled to mediate, all on that premise [that Ms. Fields 'advance[s] no alternative theories']. Defendants have expended considerable time and money conducting discovery and moving for summary judgment." *Id.* at 2 n.4. Ms. Fields, however, at least on this record, has not conceded that point.

10

Instead, the record is clear that, throughout the litigation, Ms. Fields has advanced the position that the history of conveyances is sufficient to support judgment as a matter of law in her favor, but she has never done so based purely on the language of the deeds. Rather, all such arguments have been contextualized to the factual settings of the relevant conveyances, the evident purpose of the 1961 recorded contract reserving the ROW for the benefit of the mountain parcel, the intent of the transacting parties, the history of the relevant parcels, and the otherwise landlocked nature of the mountain parcel. While much of that argument was not raised in connection with the "deed issue," she has consistently relied on facts outside the scope of deed language, and in her most recent supplementary filing she, again, clearly seeks a way of necessity as an alternative basis for the ROW. An earlier motion did likewise.

No doubt, in her summary judgment decision, Judge Teachout stated in a footnote that "Defendants' counsel is correct that Plaintiffs have not pleaded a claim for an easement by necessity or claimed that the mountain lot is landlocked." Summary Judgment Decision at 5 n.2 (filed August 28, 2019). But, in fact, Ms. Fields clearly alleged at paragraphs 31–32 of the Amended Complaint that the mountain lot *would be* landlocked without the claimed ROW. While she did not expressly assert necessity (or any other equitable doctrines) as the claimed legal basis for the ROW, she did not clearly describe *any* specific legal theory in support of the ROW. And, the facts pleaded are supportive of such alternative bases for relief.

11

In any event, Judge Teachout's summary judgment decision plainly rejected Mr. Rubinstein's premise that Ms. Fields is limited to locating a legal basis for the ROW on the face of the relevant deeds. In denying summary judgment to Mr. Rubinstein, she specifically referred to historical and situational facts apart from deed language and to legal theories, such as adverse possession, that would not appear on the face of a deed. In reference to such non-textual facts and theories, she said, "There may well be legal bases to support the Trust's current ownership of the easement right." Despite Judge Teachout's ruling, and despite the parties' desire to have the Court reconsider their summary judgment arguments, Mr. Rubinstein has never sought or received a ruling from the Court confining Ms. Fields' ownership claim to the express text of the deeds.

The Court has never limited Ms. Fields only to arguing the language of the deeds, the pleadings and filings do not suggest that Ms. Fields intended to so limit herself, and there has been no clear showing that she waived any non-textual/equitable theories or otherwise should be estopped from relying on any suggested by the alleged facts. In keeping with that view, her memoranda currently before the Court expressly raise the concept of easement by necessity.

As a result, on the present record, the Court concludes that Ms. Fields is not limited solely to the "deed basis" to support her claim for a ROW.

IV.     Propriety of Summary Judgment as to Other Bases for the ROW

As the focus of the parties' current motions and the stipulation was the "deed theory," little effort was expended with regard to assertions of easement by

12

necessity or other equitable bases for an easement. Ms. Fields devotes a passing argument to the issue of necessity. Other than asserting that Ms. Fields may not rely on such theories, Mr. Rubinstein does not engage fully on those topics either. The Court has reviewed the record, however, and notes numerous disputed facts in connection with such equitable claims. Vt. R. Civ. P. 56(c)(3).

While common ownership may terminate an easement, severance may then give rise to one, as in the case of ways of necessity and implied easements. *See Okemo Mountain, Inc. v. Town of Ludlow*, 171 Vt. 201, 206 (2000) ("To obtain a way of necessity, one must show that (1) there was a division of commonly owned land, and (2) the division resulted in creating a landlocked parcel."); 3 *Tiffany Real Prop.* § 790 (3d ed.) ("In order that an easement by implication may thus be created as based on a preexisting quasi easement, there must have originally been unity of ownership of the dominant and servient estates."); Jon W. Bruce and James W. Ely, Jr., *The Law of Easements & Licenses in Land* § 4:2 (distinguishing easements of necessity from implied easements); *contrast* Restatement (Third) Property: Servitudes § 2.11 (servitudes created by implication) *with* § 2.15 (servitudes created by necessity); *see also* Restatement (Third) of Property (Servitudes) § 2.11 cmt. e ("In most cases, servitudes are implied on the basis of the inferred intent of the parties to the conveyance."); *see also Traders, Inc. v. Bartholomew*, 142 Vt. 486, 491 (1983) (distinguishing implication and necessity); *Tallarico v. Brett*, 137 Vt. 52, 58

13

(1979) (noting that implication applies where "the conveyance is silent regarding the easement").[7]

The record of this case includes substantial evidence bearing on a possible easement beyond mere deed language in the pivotal conveyance to the Ricketts, including evidence of the existence of the ROW on the ground prior to the relevant conveyances, deed references to the ROW before and after the relevant conveyances following common ownership, that the mountain lot is landlocked without the ROW, a lack of evidence of abandonment, the intent of the parties as expressed in the recorded 1959 and 1961 contracts, the reassertion of the ROW in the November 1, 1963 conveyance from the Groves to Northern Vermont Corporation, as well as historical usage of the ROW.

The facts material to theories depending on such extrinsic evidence are not undisputed, however. Mr. Rubinstein claims that there is insufficient evidence to demonstrate that the mountain parcel would be landlocked without the disputed ROW, that the ROW is not or never was identifiable on the ground, that the various deed references do not sensibly refer to the same ROW, and he challenges Ms. Fields' portrayal of the intent of various predecessors in interest. Mr. Rubinstein's expert has largely adopted Mr. Rubinstein's description of the facts on many of these issues. Ms. Fields does not challenge Mr. Rubinstein's expert's qualifications to render professional opinions. Instead, she attempts to undermine those opinions

---

[7] The Court notes that while the complaint is suggestive of necessity, and Ms. Fields has expressly advocated in favor of necessity as an alternative theory, she has not explicitly asserted other easement theories, such as easement by implication.

14

with the testimony of her own expert, which she believes is far more compelling.[8] Such factual disputes are not the stuff of summary judgment.

In short, both parties are relying on competing expert opinions and competing evidentiary inferences in the context of a complex and extremely confusing conveyance history, all of which suggests a factual record that is not both undisputed and sufficient to support judgment as a matter of law. *See Lopez v. Concord Gen. Mut. Ins. Grp.*, 155 Vt. 320, 324 (1990) (even where the facts are undisputed, summary judgment must be denied where the record is "inadequate to demonstrate whether any party is correct as a matter of law").

Neither side can be granted judgment as a matter of law under such circumstances.

## Conclusion

For the foregoing reasons, Mr. Rubinstein's motion for summary judgment is granted, in part, as to the lack of a deeded ROW and is otherwise denied. Ms. Fields' motion for summary judgment is denied.

Counsel and parties are directed to confer with regard to possible next steps. The Court continues to encourage attempts to resolve this matter by agreement and believes that such an approach holds the best chance to arrive at a firm and lasting

---

[8] As Ms. Fields portrays it, if Mr. Rubinstein manages to prevail in this case, he will have successfully landlocked a parcel that has had functional public highway access via the ROW to the frontage lot at least since the 1940s, an outcome obviously at odds with the strong policy and "'social considerations encouraging land use.'" *Berge v. State*, 2006 VT 116, ¶ 11, 181 Vt. 1, 5 (*quoting Traders, Inc. v. Bartholomew*, 142 Vt. 486, 494 (1983)).

15

resolution in as cost-effective a manner as possible.  A renewed mediation, in light of the Court's instant ruling, would likely be a worthwhile proposition to consider.

Dated this __ day of July 2020 at Montpelier, Vermont.


_____
Timothy B. Tomasi
Superior Court Judge